### NATIONAL LIFE INS. CO. v. UNITED STATES.
#### No. M–163.

Court of Claims.
Nov. 6, 1933.

Guy Patten, of Washington, D. C. (A. R. Serven and John W. Smith, both of Washington, D. C., and Burton P. Sears, of Chicago, Ill., on the brief), for plaintiff.

Edward H. Horton and W. W. Scott, both of Washington, D. C. (Lisle A. Smith, of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

LITTLETON, Judge.

The first question relates to the right of plaintiff, an insurance company, and the National Life Building Company, an ordinary corporation, to file consolidated returns for each of the years 1923 to 1926, inclusive, and have the tax for such years computed upon such consolidated net income. We think the commissioner correctly held that a life insurance company, either life or other than life or mutual, was not entitled under the Revenue Act of 1921 (42 Stat. 227, 240) and subsequent acts to file consolidated returns with an ordinary corporation taxable under the provisions of the acts applicable to corporations generally, or to have its tax determined on the basis of such consolidation. This action of the commissioner has been approved in Fire Companies Building Corp., 23 B. T. A. 550, 553, affirmed (C. C. A.) 54 F.(2d) 488, 489, and Cincinnati Underwriters Agency Co. v. Commissioner (C. C. A.) 63 F.(2d) 309. With these decisions we entirely agree. They both dealt with the year 1926, in which the tax rate of the two corporations was different; but we think the fundamental and underlying reason for denying affiliation between an insurance company and an ordinary corporation existed for 1921 and subsequent years because of special treatment and classification by Congress of insurance corporations.

In the Fire Companies Building Corporation Case, supra, the court said: "Obviously logic must not stifle understanding, and some modus vivendi must be found. In such cases courts choose that alternative which most nearly conforms to the general purpose, so far as they can glean it. U. S. v. Katz, 271 U. S. 354, 46 S. Ct. 513, 70 L. Ed. 986; Hellmich v. Hellman, 276 U. S. 233, 48 S. Ct. 244, 72 L. Ed. 544, 56 A. L. R. 379. It appears to us rather that the general language of the section 240-a was subject to an exception in this case, than that the amorphous consolidated income should be taxed at either rate. It is idle to protest against such liberties; courts have taken them from time immemorial, and must do so if the business at hand is to go on." In the Cincinnati Underwriters Agency Company Case, supra, the court pointed out that: "There would be much force in the petitioner's contention were it possible to give it effect without defeating the legislative intent of other provisions of the act. One of such purposes, as appears from provisions made exclusively applicable to insurance companies, was to segregate such companies from other corporations for tax purposes." The court further held, in connection with the company's contention that the revenue department had permitted affiliation between insurance corporations and other corporations under the acts prior to 1926, that there were provisions even in the earlier acts which made it impracticable to permit affiliation and that there was no justification for the department's practice under those acts.

A short statement with reference to the consolidated returns' provision and the treatment of insurance corporations under the 1921 and subsequent acts will, we think, serve further to support the above-mentioned conclusions of the court that the earlier acts, as well as the 1926 act (26 USCA § 993 and note), did not permit the consolidation of insurance corporations with ordinary corporations. In Brewer's Lessee v. Blougher, 14 Pet. 178, at page 198, 10 L. Ed. 408, it was pointed out by the court that: "It is, undoubtedly, the duty of the court to ascertain the meaning of the legislature, from the words

used in the statute, and the subject-matter to which it relates; and to restrain its operation within narrower limits than its words import, if the court are satisfied that the literal meaning of its language would extend to cases which the legislature never designed to embrace in it." The consolidated returns' section, 240 of the Revenue Act of 1918 (40 Stat. 1081), was enacted at a time when insurance corporations were treated for tax purposes under the revenue statutes the same as ordinary domestic corporations; however, in the Revenue Act of 1921, approved November 23, 1921 (42 Stat. 252, § 230 et seq.), a material change was made by Congress in the basis of computing the net income of life insurance corporations. At the urgent request of such corporations special provisions were enacted for the determination of taxable income of such corporations consisting solely of investment income, that is, income from interest, dividends, and rents. Underwriting income, that is, premium receipts, was no longer included in gross income under the Revenue Act of 1921 and subsequent acts, and the deductions allowed life insurance companies, as well as those allowed insurance companies, other than life or mutual, differed materially from those allowed ordinary corporations. Thus, under the Revenue Act of 1921 and subsequent acts, deductions for losses on sale of capital assets were not allowed to life insurance companies and companies other than life or mutual. This material change in the basis of computing the net income of life insurance companies was considered by this court at length in Massachusetts Mutual Life Insurance Co. v. United States, 56 F.(2d) 897, 900, 901, wherein we recognized the peculiar plan or system, complete in itself and differing in many material respects from that relating to the taxation of ordinary domestic corporations, for the taxation of insurance companies. This special treatment of insurance companies so effectively placed them outside the class of ordinary domestic corporations entitled to file consolidated returns under the statute that it was no longer practicable to compute the tax payable by an insurance corporation on the basis of consolidation thereof with that of an ordinary corporation, other than an insurance company, and we think this special treatment manifests a purpose on the part of Congress to exclude insurance companies from the class of ordinary business corporations entitled to file consolidated returns as effectively as if a statement to that effect had been inserted in the act. Although the language of section 240 was not changed so as specifically to exclude insurance companies, neither was the language of other sections, equally broad, changed. In many sections of the 1921 and subsequent acts can be found language which, under the general definitions, is broad enough to include insurance companies, but, inasmuch as insurance companies were given special treatment as to income and deductions, no one would claim that they were included in these sections relating to corporations generally. When insurance companies were given special treatment in the Revenue Act of 1921 and subsequent acts, and their income and deductions specifically defined in a manner materially different from the income and deductions of ordinary domestic corporations, the definitions of the term "corporation" and the term "domestic" and the language of section 240, that "for the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all the stock of the other or others, * * *" contained in the Revenue Act of 1918 (40 Stat. 1082), were not changed but were carried forward into the Act of 1921 (42 Stat. 260) and subsequent acts. But because of a different system for the taxation of insurance companies provided in the act of 1921 and subsequent acts, these definitions and the quoted provision of the consolidated-returns section no longer had the same application to insurance companies they previously had and do not require the liberal application contended for by plaintiff. Massachusetts Mutual Life Insurance Co. v. U. S., supra.

The foregoing conclusion on the question of consolidation disposes of the plaintiff's claim for a reduction from gross income of amounts paid by it to the National Life Building Company as rentals for space occupied by plaintiff in a building owned by the building company. Plaintiff did not own the building. It was owned by the building company, a separate and distinct corporation, to which plaintiff paid rent and no amount was included in the income of plaintiff under the provisions of section 245 (b) of the Revenue Act of 1926 (26 USCA § 1004 (b) as rental value of space occupied. The question involved in Independent Life Insurance Co. of America, 17 B. T. A. 757, is therefore not present in this case. The rental paid by plaintiff to the building company was not deductible from plaintiff's gross income under the statute and

the commissioner correctly denied such deduction.

Plaintiff's net income as determined without consolidation with the building company was taxed by the commissioner at the rates imposed upon insurance companies and, in view of our conclusion that the commissioner correctly denied affiliation, the question of the rate of tax is no longer in the case.

The next question is whether plaintiff and the commissioner correctly included in gross income for 1923 to 1926, inclusive, accrued interest on mortgage loans, which mortgages were foreclosed and the properties purchased by plaintiff at foreclosure sales during the respective years for the amount of the mortgage indebtedness plus the accrued interest.

Plaintiff had outstanding a large number of mortgage loans on which there had been default in the payment of either principal or interest, or both. In those cases where the mortgagor did not voluntarily surrender the mortgaged premises plaintiff brought foreclosure proceedings in the courts, obtained decrees of foreclosure and judgments for the principal of its loans and accrued interest, and caused the mortgaged premises to be sold at public sale. At these sales plaintiff was the only bidder and bid for the mortgaged premises merely a nominal bid, except in those states where, under the state law, the mortgaged property might be redeemed by the mortgagor or junior lienholders. In such cases plaintiff, at such public sales, bid for the mortgaged premises the full amount of the unpaid principal and accrued interest due to the date of sale, together with court costs and other charges.

On each and every sale, under the decree of foreclosure, the sheriff in making his return to the court showed the sale by him of the mortgaged property in an amount equal to the full amount of the judgment entered by the court in the respective mortgage foreclosure suits. Before acquiring title by deed of the property purchased at the foreclosure sale, each of said mortgages was carried by plaintiff on its books of account styled "mortgage loan account" showing the exact amount of indebtedness of each mortgagor, including the unpaid principal and accrued interest to date of sale of the mortgaged property. Upon the sale under the decree of the court and upon receipt of a deed from the sheriff the plaintiff stamped the mortgage loan account "paid, National Life Insurance Company of the United States of America," and thereupon transferred the "mortgage loan account" to an account styled "real estate owned account," therein charging itself with real estate purchased in an equal amount. It also, in an income account set up on its books, included as interest received during the year the accrued interest to date of receipt by it of the deed from the sheriff for the respective properties purchased, and also included this accrued interest as income in its annual statements, "Convention Edition," to the insurance departments of the various states for 1923 to 1926, inclusive, and also included in gross income in its income-tax returns for 1923 to 1926, inclusive, as interest received, accrued interest which it had included in its bids for the properties to date of receipt by it of the sheriff's deed for the respective mortgaged properties, together with accrued interest to date of deed on property voluntarily surrendered, the amount of accrued interest so included being $94,761.64 for 1923, $26,360.16 for 1924, $56,135.34 for 1925, and $48,010.78 for 1926.

As a result of his final audit for 1925, the commissioner found additional accrued mortgage interest of $15,760.07, not included by plaintiff in its return for that year, making the total amount of accrued interest $71,895.41 for 1925. Thereafter plaintiff filed claims for refund for the years 1923 to 1926, inclusive, on the ground that this accrued interest had never been actually received by it and that it did not constitute taxable income under the provisions of the Revenue Act of 1921 and subsequent acts. The commissioner, after consideration of these claims for refund, held that in those cases where foreclosure proceedings had not been instituted no judgment obtained and the mortgaged property was not bought in by plaintiff at foreclosure sale, but where the property had been voluntarily deeded to plaintiff by mortgagors, accrued interest on the mortgages had not been actually received within the meaning of the taxing acts and was not therefore taxable income to plaintiff. This interest was, therefore, excluded from income and is not in question here. But the commissioner further held that where the mortgaged property was purchased by plaintiff at public sale under judgment of foreclosure and bid in by plaintiff for the amount of the unpaid principal plus accrued interest to the date of sale, such interest constituted taxable net income received by plaintiff during the respective taxable years.

The amounts of interest due under the mortgages and unpaid to the date of sale of the properties and the purchase thereof by plaintiff in controversy are $70,545.58 for

1923, $20,703.69 for 1924, $70,533.61 for 1925, and $21,547.71 for 1926.

The income of a life insurance company is computed on the basis of actual receipts and disbursements and the question here involved is whether plaintiff received the interest in the amounts last above mentioned within the meaning of the statutes defining income of the insurance companies to be interest, dividends, and rents received during the year.

Plaintiff contends that under the plain language of the statute and the regulations the interest in controversy did not constitute gross income because none of it was received during the years involved or has ever been received; that instead of having received it, which implies a profit on money loaned, the plaintiff was facing a condition of its business which indicated large losses on account of these very loans. This contention is based upon the fact that the properties could have been acquired by plaintiff at the foreclosure sales for amounts less than its bid prices at which such properties were sold to it. But it does not appear that if plaintiff had bid in the properties for $70,545.58, $20,703.69, $70,-533.61, and $21,547.71, respectively, less than it bid and paid therefor, such properties, or some of them, would not have been redeemed for the price paid or further annoyance caused to plaintiff on account thereof.

Throughout consideration of this question it should be kept in mind that we are here dealing with a purchase and sale transaction and not with an exchange of property, and, although insurance companies are specially taxed under the statute and are not allowed deductions for losses sustained, if any should be sustained, upon a subsequent sale of property purchased at the foreclosure sales, this fact does not require that the real nature of the transaction be ignored or necessitate that it be viewed differently from that which its real nature requires. In its essence the transaction consisted of a judgment in favor of plaintiff and against the mortgagor for the principal indebtedness plus the accrued interest and a decree of foreclosure and sale of the properties given as security for such indebtedness and interest. The properties were duly advertised and sold at public sale to satisfy the judgment or so much of it as might be derived from such sales. At these public sales plaintiff offered for the properties the full amount of the unpaid principal and accrued interest due it to the date of the sale, and the properties were duly sold to plaintiff by the officer designated by the court to make the sale. This, in our opinion, established the market for these particular properties for the purposes of this case and is determinative of whether plaintiff received the interest in question.

Plaintiff had a judgment of the court against the debtor for the amount of the principal and interest and, instead of bidding a lesser amount than its claim for the properties and collecting the balance by other means, it paid the full amount of the unpaid principal and accrued interest, thereby completely satisfying the judgment and leaving no claim for any portion of the principal or accrued interest outstanding against the debtor. In effect, there was a payment in the court by plaintiff of the amounts which it bid for the properties and the payment by the court to plaintiff of a like amount. Viewed in this light plaintiff actually received the interest due it. Inasmuch, however, as plaintiff was the purchaser of the properties under the sales there was no payment of money but the properties were deeded to plaintiff. There must have been, and doubtless were, circumstances which led plaintiff to believe that the acquisition of a complete and clear title to the properties was worth the amount of the unpaid principal and accrued interest to it. There was a consideration moving to plaintiff for its bid for the amount of the unpaid principal and accrued interest; such bid foreclosed the equity of redemption of the mortgagor or junior lienholder and precluded all further controversies that might have arisen had the property been bid in for a lesser sum and judgment taken against the mortgagor for the balance.

It is not open to question that when mortgaged property is sold to the successful bidder at a sale under a mortgage foreclosure a valid, binding, and enforceable liability for the bid price is created. And, in this case, plaintiff by its bid incurred an enforceable liability equal to the price which it bid when these respective mortgaged properties were struck off to it by the sheriff at the respective foreclosure sales. As a general rule an officer selling property under a decree of foreclosure has no authority to sell on credit, or to accept as payment of the bid price anything other than lawful money, unless otherwise expressly authorized by the terms of the decree or the law governing the sale. And where the return of the officer making the sale, as in this case, shows the sale of the property in an amount equal to the full amount of the judgment entered by the court, it must be presumed that the money was paid in cash or its equivalent. Where the creditor

becomes the purchaser of the mortgaged property it is usually considered a sufficient compliance with the requirements of a sale for cash that the amount of the bid be credited on the mortgaged debt, but the judgment for the indebtedness is fully satisfied to the extent of the amount bid by the creditor, either wholly or pro tanto.

When plaintiff bid in these mortgaged properties it became a purchaser and its title to and rights in the properties were the same as if it had been a stranger to the mortgages. The fact that it was not only the purchaser but also the mortgagee is without legal significance. The mortgagee acquired the same right and interest in the sale as a third person would, no more, no less. The only advantage he has is that to the amount of the judgment in his favor he is not obligated to pay over the purchase price, to that extent, his bid being a payment of his debt. Ledyard v. Phillips, 47 Mich. 305, 11 N. W. 170.

Upon the acquisition of these properties plaintiff entered into possession thereof not as a mortgagee but as a purchaser. When a mortgagee bids in property at a foreclosure sale he pays therefor either cash or the equivalent of cash by crediting the amount of his bid, which is the purchase price, against the mortgagor's indebtedness to him, thereby releasing and extinguishing the mortgagor's liability to the extent of the proceeds of the foreclosure sale applicable to the mortgaged debt. The transaction is no different than if the bidder paid to the officer making the sale the full amount of his bid and such officer thereafter paid to the mortgagee the unpaid principal and accrued interest to the date of sale. In legal effect, this is the result of the transaction by which plaintiff acquired title to the mortgaged properties and to the extent of accrued interest to the date of the sales, and plaintiff, by its bid, established the market, which we must recognize, for these particular properties and by such bid realized cash, or its equivalent. To that extent it realized taxable income with respect to the interest due it and included in the price paid for the property.

Whether a mortgagee, who becomes the purchaser of the mortgaged property, through bidding it in for the amount of the principal of the indebtedness plus accrued interest, may sustain a loss on a future disposition of the property, is of no controlling importance in determining whether he received the interest due by including the same in the price at which the property was purchased. That would be another and an entirely differ-ent transaction. If the property after being purchased by the mortgagee should be sold for more than cost, the excess is a profit on the sale of property and can in no sense be treated as the receipt of interest on a loan. And the same is true whatever basis is used, whether cost or market value. Plaintiff seems to rely to some extent upon Article 153 of Regulations 69, but this regulation relates entirely to the gain and loss section of the statute which is not applicable to insurance companies and has for its purpose the determination under such section of the statute of loss or gain on the acquisition and sale of property. The Board of Tax Appeals has uniformly held that a mortgagee who bids in mortgaged property for the amount of the unpaid principal and accrued interest due to date of sale realizes taxable gain to the extent of the amount of accrued interest included in the bid. Manomet Cranberry Co., 1 B. T. A. 706, 709; Reserve Loan Life Insurance Co., 18 B. T. A. 359, 370; Ewen MacLennan, 20 B. T. A. 900.

The case of John Hancock Mutual Life Insurance Co., 10 B. T. A. 736, upon which plaintiff relies, is distinguishable in that the total proceeds of the sale in that case were found by the board to be no more than sufficient to pay the principal of the debt. In Reserve Loan Life Insurance Co., supra, the board said with reference to the case of the John Hancock Mutual Life Insurance Co., supra, that: "We there held that, since the net proceeds of the foreclosure were less than the principal, the taxpayer had suffered a loss of part of its principal and that no part of the accrued and unpaid interest constituted income to the taxpayer."

In the present case plaintiff not only credited the respective mortgagors with payments in full of their mortgage debt, including interest, but also charged the amounts thus paid to "real estate purchased" and included the accrued interest in its reports to the insurance departments of the various states and also included it in gross income in its tax returns filed for the years 1923 to 1926, inclusive.

Plaintiff contends, however, that it has established that the market value of these properties at the time they were bid in by it was less than the amounts for which they were purchased; that plaintiff could have acquired such properties at the foreclosure sales for much less than it bid therefor; and that this definitely establishes that it received nothing on account of the interest in question. It is our opinion, however, that such claimed general market value or price at which plaintiff

might have bid the properties in, subject to redemption, must give way to the cash or actual market value of the properties to it which plaintiff placed thereon when it bid them in at the foreclosure sales. It is, therefore, immaterial what the properties might have brought on the general market. Henry Heldt, 16 B. T. A. 1035, 1037. In these circumstances plaintiff is not entitled to recover. This conclusion makes is unnecessary to discuss the other point made by the defendant, that plaintiff has received a refund of all the taxes paid by it on account of its income for the years 1924 and 1926, and that in none of the years from 1923 to 1926, inclusive, is plaintiff entitled to recover any of the taxes of the National Life Building Company paid by the building company or by plaintiff on its behalf.

The petition is dismissed. It is so ordered.