HELVERING, COMMISSIONER OF INTERNAL REVENUE, *v.* MIDLAND MUTUAL LIFE INSURANCE CO.

No. 257. Argued January 7, 1937.—Decided February 15, 1937.

*Mr. David E. Hudson,* with whom *Solicitor General Reed, Assistant Attorney General Jackson,* and *Messrs. Sewall Key* and *Maurice J. Mahoney* were on the brief, for petitioner.

*Mr. Wm. Marshall Bullitt,* with whom *Mr. F. J. Wright* was on the brief, for respondent.

218

Mr. Justice Brandeis delivered the opinion of the Court.

Since 1921, the Revenue Acts have made this provision for taxing the income of life insurance companies.[1] The gross income is limited to that "received during the taxable year from interest, dividends, and rents." Upon the net income, ascertained by making prescribed deductions, the tax under the Act here applicable is 12 per cent.[2] The general provisions of the Revenue Acts concerning capital "gains and losses" and "bad debts" are not applicable to life insurance companies.[3]

In 1930, the Midland Mutual Life Insurance Company of Ohio caused to be foreclosed several mortgages on real estate given to secure loans which were in default. It was the only bidder; its bid was accepted; the property was conveyed to it; and in no case was there redemption. At each foreclosure sale the company had bid an amount which included interest as well as the principal. The interest so bid, aggregating on the foreclosed mortgages $5,456.99, was not included in the company's income tax return. The Commissioner of Internal Revenue decided that this interest was taxable and, accordingly, determined a deficiency in the company's income tax for 1930. His determination was approved by the Board of Tax Appeals. The Circuit Court of Appeals reversed the decision of the Board, 83 F. (2d) 629. We granted certiorari because of conflict with *Helvering* v. *Missouri State Life*

[1] See *National Life Insurance Co.* v. *United States*, 277 U. S. 508, 522.

[2] Revenue Act of 1928, § 201 (b) (1), 45 Stat. 791, 842.

[3] Compare §§ 244 (a), 245 (a), of the Revenue Acts of 1921, 42 Stat. 227, 261; 1924, 43 Stat. 253, 289; 1926, 44 Stat. 9, 47; §§ 202 (a), 203 (a), of the Revenue Acts of 1928, 45 Stat. 791, 842; 1932, 47 Stat. 169, 224; 1934, 48 Stat. 680, 731, 732; 1936, 49 Stat. 1648, 1710. See *Helvering* v. *Independent Life Insurance Co.*, 292 U. S. 371, 377, 379; U. S. Treas. Reg. 74, Art. 951.

*Ins. Co.,* 78 F. (2d) 778, and *National Life Ins. Co.* v. *United States,* 4 F. Supp. 1000.

The following additional facts stipulated were adopted by the Board of Tax Appeals as its findings: The Company kept its books on a "calendar year" "cash receipts and disbursements" basis, entering only payments of interest actually made to it during the year. Upon its acquiring title to the foreclosed properties, the investments were transferred on its books from the mortgage loan account to the real estate account and were carried thereon as assets at amounts which were equal to the principal of the loans secured by the mortgages plus any disbursements made for taxes, court costs, attorneys fees or insurance premiums. The amount of interest included in the bids on foreclosure was not carried on the books as part of the cost of the properties or as an asset. Nor was it entered on the books or likewise treated as income. All of the properties here involved were located in States where a period of redemption from foreclosure is allowed. The company issued to its representatives having charge of foreclosures in those States general instructions to bid on its behalf such sums as would enable the company to realize no loss on account of its investment in case of redemption. The bids here involved were made pursuant to those instructions, without regard to the then actual value of the mortgage property.[4]

[4] A large majority of the properties were located in Michigan. By Michigan law, it is said, the mortgagor is allowed one year from the date of the foreclosure sale within which he may redeem the property by paying to the purchaser the amount bid for the property plus interest from the time of the sale at the rate borne by the mortgage, even though the amount of such bid be less than the total amount of the mortgagee's investment in the property. See Comp. Laws 1929, c. 266, §§ 14435, 14436; compare *Vosburgh* v. *Lay,* 45 Mich. 455; 8 N. W. 91. The purchaser cannot, under the local law, acquire title until after the expiration of the redemption period. See Comp. Laws 1929, c. 266, § 14434. The mortgagee may, "fairly and

The company introduced evidence that the fair market value of the properties was, at the dates of foreclosure and of acquiring title, less than the amount of the principal due on the mortgages. This evidence was deemed by the Board immaterial; and it accordingly made no finding as to fair market value.[5]

*First.* The company contends that it did not "receive" the $5,456.99 (or any part thereof) either in cash or in property; and, hence, that it was not "gross income." Confessedly no interest was received in cash. The company insists that none was received in property. It argues that its bid may not be taken as conclusive evidence of the value of the property, invoking *Ballentyne* v. *Smith,* 205 U. S. 285; that the Board's refusal to consider the evidence as to value requires us to hold that the real estate acquired on foreclosure was of a fair value less than the amount of the principal of the mortgage debt; that the proceeds of a mortgage sale must be applied first to the satisfaction of the principal before income may be held received, citing *Doyle* v. *Mitchell Bros. Co.,* 247 U. S. 179, 185; and that since the value did not equal the principal, there were no proceeds of the sales applicable to the interest, hence, no taxable income. In support of this argument, the company points to the fact that it did not, on its books, treat the delinquent interest as income; did not, directly or indirectly, carry the

in good faith," bid the property in, (*id.,* § 14432), and he enjoys the same rights as purchaser as would a third party. See *Ledyard* v. *Phillips,* 47 Mich. 305, 308; 11 N. W. 170.

[5] The order of the Court of Appeals, which reversed the decision of the Board, remanded the cause for further proceedings. We are told by counsel for the company that thereafter the Board found, on the evidence above referred to, that the values of the several properties were less than the principal of the loans. This finding, made after the filing of the petition for certiorari, though apparently before its allowance, was not made part of the record. It is, therefore, disregarded.

interest as part of the cost of the properties or as an asset; and did not include the interest as an asset in its annual statement or in its reports to insurance departments.

The arguments rest upon a misconception. The terms "interest," "dividends," and "rents," employed in the statute simply and without qualification or elaboration, were plainly used by Congress in their generic meanings, as broadly descriptive of certain kinds of "income." Compare *Lynch* v. *Hornby*, 247 U. S. 339, 344; *Helvering* v. *Stockholms Enskilda Bank*, 293 U. S. 84, 86. We cannot say that Congress did not intend to include in its definition a case like the present merely because the taxpayer received a credit rather than money or other tangible property. Compare *Raybestos-Manhattan, Inc.* v. *United States*, 296 U. S. 60, 62, 64. A receipt of interest is taxable as income whether paid in cash or by a credit. Compare *Old Colony Trust Co.* v. *Commissioner*, 279 U. S. 716; *United States* v. *Boston & Maine R. R., id.*, 732. This credit, it is true, was not entered on the taxpayer's books as interest or as an asset. But book-keeping entries, though in some circumstances of evidential value, are not determinative of tax liability. Compare *Doyle* v. *Mitchell Bros. Co.*, 247 U. S. 179, 187. The intent to use the full extent of power being clearly evident, we must not confine the legislation within narrower forms than the statutory language would indicate. Compare *Irwin* v. *Gavit*, 268 U. S. 161, 166; *Helvering* v. *Stockholms Enskilda Bank, supra,* 89.

*Second.* The company argues that uncontradicted evidence shows the fair market value of the mortgaged properties to have been less than the principal of the debts and that therefore the interest paid was not income within the meaning of the Act. A mortgagee who, at foreclosure sale, acquires the property pursuant to a bid of the principal and accrued interest is, as purchaser and grantee, in a position no different from that of a

stranger who acquires the property on a bid of like amount. It is true that the latter would be obliged to pay in cash the amount of his bid, while the formality of payment in cash is ordinarily dispensed with when the mortgagee acquires the property on his own bid. But the rights acquired *qua* purchaser are the same in either case; and, likewise, the legal effect upon the mortgage debt is the same. In each case the debt, including the interest accrued, is paid. Where the stranger makes the purchase, the debt is discharged by a payment in cash; where the mortgagee purchases the property, the debt is discharged by means of a credit. The amount so credited to the mortgagor as interest paid would be available to him as a deduction in making his own income tax returns.[6] It would be strange if the sum deductible by the mortgagor debtor were not chargeable to the mortgage creditor as income received. Where the legal effect of a transaction fits the plain letter of the statute, the tax is held payable, unless there is clearly revealed in the Act itself or in its history a definite intention to exclude such transactions from the operation of its applicable language. See *Central National Bank* v. *United States,* 137 U. S. 355, 364;[7] *Treat* v. *White,* 181 U. S. 264, 268; *Provost* v. *United States,* 269 U. S. 443, 456, 457, 458; *Old Colony R. Co.* v. *Commissioner,* 284 U. S. 552, 560, 561. Respondent here makes no such showing.

*Third.* The company argues that taxation is a practical matter; that we should be governed by realities; that the reality is, that all the company got was the property; and that the property was worth less than the principal of the debt. The "reality" of the deal here involved

[6] See Revenue Act of 1928, § 23 (b), 45 Stat. 791, 799.

[7] See also *Kentucky Improvement Co.* v. *Slack,* 100 U. S. 648, 658, 659; *Bailey* v. *Railroad Co.,* 106 U. S. 109, 115, 116; compare *Cary* v. *Savings Union,* 22 Wall. 38, 41.

would seem to be that respondent valued the protection of the higher redemption price as worth the discharge of the interest debt for which it might have obtained a judgment. Moreover, the company's argument ignores the needs of an efficient system of taxation. The administration of the income tax law would be seriously burdened if it were held that when a mortgagee bids in the property for a sum including unpaid interest, he may not be taxed on the interest received except upon an inquiry into the probable fair market value of the property.[8] "At best, evidence of value is largely a matter of opinion, especially as to real estate." *Montana Railway Co.* v. *Warren,* 137 U. S. 348, 353. There is nothing unfamiliar in taxing on the basis of the legal effect of a transaction. Income may be realized upon a change in the nature of legal rights held, though the particular taxpayer has enjoyed no addition to his economic worth. Compare *Lynch* v. *Hornby,* 247 U. S. 339, 344, 346; *United States* v. *Phellis,* 257 U. S. 156, 170, 171; *Marr* v. *United States,* 268 U. S. 536, 540; *Burnet* v. *Commonwealth Improvement Co.,* 287 U. S. 415, 419, 420. "The income tax laws do not profess to embody perfect economic theory. They ignore some things that either a theorist or a business man would take into account in determining the pecuniary condition of the taxpayer." *Weiss* v. *Wiener,* 279 U. S. 333, 335. Compare *Nicol* v. *Ames,* 173 U. S. 509, 516; *Tyler* v. *United States,* 281 U. S. 497, 503.[9]

---

[8] Compare *Bell's Gap R. Co.* v. *Pennsylvania,* 134 U. S. 232, 236; *Hatch* v. *Reardon,* 204 U. S. 152, 159; *Paddell* v. *New York,* 211 U. S. 446, 449, 450; *New York* v. *Latrobe,* 279 U. S. 421, 427.

[9] Taxability has frequently been determined without reference to factors which the accountant, economist or business man might deem relevant to the computation of net gain. Compare *Brushaber* v. *Union Pacific R. Co.,* 240 U. S. 1; *Tyee Realty Co.* v. *Anderson,* 240 U. S. 115; *Weiss* v. *Wiener,* 279 U. S. 333; *Helvering* v. *Independent*

*Fourth.* The company contends that to tax the mortgagee as upon interest received is inconsistent with the rule declared in *Louisville Joint Stock Land Bank* v. *Radford,* 295 U. S. 555, 594, that the mortgagee is entitled to have "the mortgaged property devoted primarily to the satisfaction of the debt, either through receipt of the proceeds of a fair competitive sale or by taking the property itself." The charge of inconsistency is unfounded. The company exercised its right to have a sale. At the sale, it was free either to bid or to refrain from bidding. If it bid, it was free to bid such sum as it pleased. It chose to bid the full amount of principal and interest. Thus it obtained, in legal contemplation, full payment of the interest as well as the principal. To tax the company upon the full amount of interest received as a result of its own bid in no way impairs its rights as mortgagee. Compare *Texas & Pacific Ry. Co.* v. *United States,* 286 U. S. 285, 289. If the bid had been insufficient to yield full payment of the mortgage debt, principal and interest, the company would have been entitled to a judgment for the deficiency. If the company had refrained from bidding, and a stranger had bid more than the principal, the company would obviously have been taxable upon the excess up to the amount of the interest due. Perhaps it was the company's custom of bidding the full amount of principal and interest which deterred bidding by others.

*Reversed.*

MR. JUSTICE McREYNOLDS, dissenting.

The judgment below, I think, is correct and should be affirmed. A well-considered opinion supports it.

---

*Life Insurance Co.,* 292 U. S. 371. The exigencies of a tax determined on an annual basis may lead to the inclusion as income of items which might be shown to involve no gain if the transactions were viewed as a whole over several years. Compare *Burnet* v. *Sanford & Brooks Co.,* 282 U. S. 359, 364, 365; *Brown* v. *Helvering,* 291 U. S. 193, 199; *Spring City Foundry Co.* v. *Commissioner,* 292 U. S. 182, 189, 190.

The notion that Congress intended to tax the mere hope of recouping a loss sometime in the future should be definitely rejected.

To support the assertion that here the company collected interest, when in fact everything received was worth less than the sum loaned, requires resort to theory at war with patent facts. The Company got nothing out of which to pay the exactment; its assets were not augmented. Like imaginary "receipts" of interest often repeated and similarly burdened would hasten bankruptcy.

Divorced from reality taxation becomes sheer oppression.