LEONARD MARX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 106238.    Promulgated June 26, 1942.

*Emily Marx, Esq.*, for the petitioner.
*John W. Fisher, Esq.*, for the respondent.

**OPINION.**

VAN FOSSAN: The question for our determination is whether or not petitioner is taxable for the years 1937 and 1938 on one-third of the capital gains received in those years by the trust of which petitioner was the beneficiary of one-third of the income and where the trust provided that petitioner's share of the principal of the trust should be conveyed to him on reaching thirty years of age. He became thirty years of age on October 4, 1934. It is petitioner's contention that the trust continued in effect as to him through 1937 and 1938 because, for legitimate reasons, his share of the corpus of the trust had not been distributed to him. Respondent contends that the dis-

tribution of petitioner's share of the corpus has been unreasonably delayed and that during those years petitioner was in substance the owner of the property and taxable on gains derived therefrom under section 22 (a) of the Revenue Acts of 1936 and 1938.[1]

It is the law of New York State that the life of a trust does not automatically terminate with the death of the person by whose life the duration of the trust is measured. *In re Miller's Will*, 257 N. Y. 349; 178 N. E. 555; *Deering* v. *Pierce*, 149 A. D. 10; 133 N. Y. S. 582. It does not follow, however, that the parties can indefinitely postpone the winding up of a trust. A reasonable time is permitted after the event which terminates the trust for the trustees to pay taxes and administration expenses, to have an accounting, and to perform other duties necessary to complete the administration of the trust. See *Willard C. Lipe, Jr.*, 41 B. T. A. 107; affd., *Commissioner* v. *First Trust & Deposit Co.*, 118 Fed. (2d) 449.

Thus, in this proceeding if the delay in the payment to petitioner of one-third of the corpus was not unreasonable, the trust remained fully effective so far as petitioner's control over the trust as beneficiary was concerned. However, if and when the delay became unreasonable petitioner could have compelled the outright transfer to himself of his share of the corpus and different considerations become important.

The query then arises whether the failure of the beneficiary to compel distribution and the delay by the trustees are sufficient to make the beneficiary the owner of the corpus for purposes of taxation under section 22 (a), *supra*. Pronouncements of the Supreme Court shed light on this question. In *Corliss* v. *Bowers*, 281 U. S. 376, the Supreme Court, speaking through Justice Holmes, in holding the grantor of a trust liable for income taxes on trust income paid to his wife, made this statement:

But taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed—the actual benefit for which the tax is paid. * * * The income that is subject to a man's unfettered command and that he is free to enjoy at his own option may be taxed to him as his income, whether he sees fit to enjoy it or not. * * *

In *Helvering* v. *Clifford*, 303 U. S. 331, the Court, in discussing section 22 (a) of the Revenue Act of 1934, said:

* * * the broad sweep of this language indicates the purpose of Congress to use the full measure of its taxing power within those definable categories.

---

[1] SEC. 22. GROSS INCOME.

(a) GENERAL DEFINITION.—"Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *

Cf. *Helvering* v. *Midland Mutual Life Insurance Co.*, 300 U. S. 216, 57 S. Ct. 423, 81 L. Ed. 612, 108 A. L. R. 436. Hence our construction of the statute should be consonant with that purpose. Technical considerations, niceties of the law of trusts or conveyances, or the legal paraphernalia which inventive genius may construct as a refuge from surtaxes should not obscure the basic issue.

\* \* \*

The following statement from *H. S. Richardson*, 42 B. T. A. 830, 839; affd., 121 Fed. (2d) 1; certiorari denied, 314 U. S. 684, is also apropos:

\* \* \* Here, the property and the income therefrom is so clearly subject to the petitioner's unfettered command that they are, in substance, his and, even though he did not see fit to use the property or the income during the taxable year, the latter may be taxed to petitioner as his income under the broad general tax provisions of section 22 (a) \* \* \*.

As the above authorities indicate, it is the power which the taxpayer has over property which determines his taxability on income therefrom. Here, the will directed distribution of petitioner's share of corpus when he reached thirty. There was no provision in the will preventing the distribution to petitioner. Furthermore, there was little or no probability that the trustees would object to the distribution, since the petitioner himself and his sister were the sole trustees. It is true that an accounting might have been necessary, but this should have been had during the lapse of a reasonable time after petitioner became thirty years of age. The fact that petitioner was not the grantor of a trust or the assignor of income is not sufficient reason for distinguishing this proceeding from the above authorities. See *H. S. Richardson, supra.* Nor is it material that the profits derived by the trust on the sale of part of the corpus were not actually turned over to petitioner. See *Whiteley* v. *Commissioner*, 120 Fed. (2d) 782. If the delay in distribution was unreasonable, we are of the opinion that petitioner in substance became the owner of his distributive share of the trust corpus and therefore was taxable on the capital gains derived therefrom.

It can not be gainsaid that there has been delay in distribution of the corpus to petitioner. He became thirty on October 4, 1934. Whether or not the delay was unreasonable is a question of fact, the burden of proof of its reasonableness resting on petitioner. Petitioner has attempted to show that the delay was not unreasonable because a large part of the assets of the trust consisted of stock in real estate corporations which could not be liquidated. He contends that, before applying for an order directing the distribution of the corpus to him, the trustees wanted to make the trust liquid. At the hearing Emily Marx, one of the trustees of the trust here involved and attorney for petitioner, in answer to a question, directed by herself as attorney to herself as witness, testified that "the trustees believe that the nature

of the property held by them is still such as to make physical segregation and distribution among the three trustees inadvisable and in many cases impossible," and that "it would have been very poor business and detrimental to the beneficiaries to divide up that stock." No showing was made by petitioner why the trustees believed the distribution inadvisable during the taxable years in question or why it would have been "very poor business and detrimental to the beneficiaries" to divide up the stock.

The record discloses that the stock of the real estate companies which it is claimed prevented the distribution to petitioner of his share of the corpus of the trust consisted of three shares in the Joseph E. Marx Co., Incorporated, valued at $105,247.70, and five shares in the Happy Home Realty Co., valued at $28,076.95. All of the stock in the latter company was owned by the trust. The only outstanding stock of the Joseph E. Marx Co., other than that held by the trust, was owned by the Relmar Holding Co. The stock in the latter company was in turn owned by three trusts set up for members of the Marx family. Petitioner and Emily Marx were trustees of one of these trusts for the benefit of petitioner's mother; Emily Marx and Regina Marx were trustees of another of the trusts for the benefit of petitioner's wife; and petitioner and Regina Marx were trustees of the third trust for the benefit of the daughter of Emily Marx. Thus, petitioner, Emily Marx, and Regina Marx, as trustees, entirely controlled the Joseph E. Marx Co., and petitioner and Emily Marx as trustees entirely controlled the Happy Home Realty Co.

With such control distribution would apparently have been an easy matter. Nor can we perceive any disadvantage to the beneficiaries if one-third of the stock in the real estate companies had been transferred out of petitioner's name as trustee and into his name as an individual, in view of the fact that after such a transfer control of the stock by the Marx family would still have remained intact. The task of proving that this would have been detrimental to the interests of the beneficiaries of the trust rested on the petitioner as part of his burden to show that the failure to distribute to petitioner his share of the corpus through 1937 and 1938 was not unreasonable.

We are of the opinion that petitioner has not sustained his burden of proving that the delay was not unreasonable and that the income was not taxable to him. He must, accordingly, fail.

*Decision will be entered under Rule 50.*