**DEL MARCELLE et al. v. KUHL, Collector of Internal Revenue.**

Civ. A. No. 4385.

United States District Court
E. D. Wisconsin.

June 10, 1948.

L. O. Warne and Martin, Clifford, Dilweg & Warne, all of Green Bay, for plaintiffs.

Timothy Cronin, U.S. Atty., and E. J. Koelzer, Asst. U.S. Atty., both of Milwaukee, Wis. and M. P. Wolk, Sp. Asst. to the Atty. Gen., for defendant.

DUFFY, District Judge.

The plaintiffs (hereinafter called "taxpayers") seek to recover income taxes alleged to have been overpaid by them for the following years in the amounts stated:

| | |
|------|--------|
| 1943 | $517.62 |
| 1944 | 372.92 |
| 1945 | 281.00 |

During the years involved the taxpayers operated the Fort Howard Hotel, Green Bay, Wisconsin. In conjunction with the hotel they also operated a tavern on the same premises. Separate books were kept for each business. While the books show-

ing receipts from the operation of the hotel are not entirely satisfactory, the government has accepted them as correct, and consequently no issue exists in that respect. The government has, in addition, accepted the amounts claimed by taxpayers as business expense, leaving for determination only the question of how much income taxpayers received from their tavern business.

The tavern books constitute the only evidence of this income. Entries in them of such income were made in the following manner: Sales of beer, whiskey and other merchandise were rung up on a cash register, an old machine having no tape, but equipped to show the aggregate amount of sales. Taxpayers' practice was to set the register back to zero every morning and by taking a reading the following morning, they were able to determine the total amount of sales rung up during the preceding day. Daily readings from the register were entered in taxpayers' current tavern book in the column headed "Cash Receipts," after which the register was cleared for the next day's business. Once the register was cleared, taxpayers had no record of their tavern receipts other than that shown by the tavern books.

Each tavern book was designed to cover a two year period with a separate page for each month. Daily entries were made on the appropriate page; and at the end of the month, the entries on the page were added up and the total carried to the end of the book and entered on a page captioned "Summary for Two Years."

Taxpayers filed original returns for each of the years in question. In these returns they reported as gross receipts the total sales shown by the tavern books.

In July, 1946, taxpayers' books and returns were audited by Deputy Collector Longrie, who noted numerous erasures and alterations in the columns headed "Cash Receipts," and particularly that the monthly summary for 1944 had first appeared on the top half of the page but had been erased and new monthly summaries for that year had been entered on the lower half of the page. When the latter page was then examined by Longrie the figures

appearing in the upper half were still legible and he made a copy of them. At the time of the trial, however, the original entries on the upper half of the summary page were no longer readable, but it was still apparent that entries had been made and erased.

Longrie, confronted with the numerous erasures and alterations in the taxpayers' tavern books, undertook a reconstruction of taxpayers' receipts for the sales of beverages and other merchandise. He determined from inventory statements and purchase invoices how much whiskey had been sold. Treating all liquor purchased by taxpayers in fifths and quarts as having been sold by the drink, he computed the number of drinks so sold based on sales in five-eights ounce glasses. He then multiplied the number of drinks so determined by twenty cents. While taxpayers' posted prices ranged from twenty to thirty-five cents per glass, Longrie assumed all sales to have been made at twenty cents each. Sales of pints and half pints were assumed to have been made on a per bottle basis and were so computed. Income from the sale of beer was determined in a similar manner.

After his tabulation had been completed, Longrie called in the taxpayers. He explained to them that according to his computations taxpayers' books did not properly reflect the receipts from the tavern, and he showed his work sheets to the taxpayer"s". They pointed out that Longrie had failed to make provision for waste, spillage, breakage, and buybacks. It was then agreed that an allowance of ten per cent be made for these items. With this adjustment, taxpayers accepted as correct Longrie's computation of tavern income and they instructed him to prepare amended tax returns on that basis. An interval of several days elapsed before the amended returns were prepared. Taxpayers signed such amended returns on July 26, 1946. Another day elapsed between the execution of the amended returns and the payment by taxpayers of the additional taxes payable thereunder.

A few months later taxpayers filed second amended returns for the years involved

618

and also claims for refund. Differences in net income and tax liability as shown by each set of returns filed by the taxpayers are as follows:

Net Income

| Return | 1943 | 1944 | 1945 |
|---|---|---|---|
| Original | $1,002.59 | $3,042.52 | $2,970.18 |
| First Amended | 4,455.39 | 5,289.98 | 4,593.83 |
| Second Amended | 2,398.47 | 3,827.29 | 3,302.60 |

Tax Liability

| Return | 1943 | 1944 | 1945 |
|---|---|---|---|
| Original | $ 1.13 | $ 459.74 | $398.00 |
| First Amended | 785.69 | 1,027.51 | 754.00 |
| Second Amended | 268.07 | 654.59 | 473.00 |

 The taxpayers have the burden of establishing their alleged tax overpayment claims by adequate evidence. Reinecke v. Spalding, 280 U.S. 227, 232, 233, 50 S.Ct. 96, 74 L.Ed. 385. In this connection they place exclusive reliance upon their books of account concerning the tavern business. At best, books of account "are no more than evidential, being neither indispensable nor conclusive" (Doyle v. Mitchell Brothers Co., 247 U.S. 179, 187, 38 S.Ct. 467, 470, 62 L.Ed. 1054); "bookkeeping entries, though in some circumstances of evidential value, are not determinative of tax liability" (Helvering v. Midland Mutual Life Insurance Co. 300 U.S. 216, 223, 57 S.Ct. 423, 426, 81 L.Ed. 612). The real facts, not mere bookkeeping entries, control in tax as well as other controversies. Incidentally, the opinions of experts with reference to books of account have no more probative force than the books themselves. Wessel v. United States, 8 Cir., 1931, 49 F.2d 137, 139. These principles are implicitly recognized in Sec. 29.54-1 of Treasury Regulations 111, which prescribe that the books of account of taxpayers must be "sufficient to establish the amount of the gross income," etc.

 Thus, books of account, in order to be entitled to any probative force, must be fairly and honestly kept; they cannot be given evidential value (absent a satisfactory explanation) when suspicious marks of erasure and alteration in a material respect appear on them. 32 C.J.S., Evidence, § 685f, page 563. Indeed, an affirmative willful attempt to defeat or evade taxes may be inferred "from * * * making false entries or alterations (in books of account) * * * or covering up sources of income, * * * and any conduct, the likely effect of which would be to mislead or to conceal." Spies v. United States, 317 U.S. 492, 499, 63 S.Ct. 364, 368, 87 L.Ed. 418.

 Almost one hundred marks of erasure and alteration appear on taxpayers' books for the three years here under consideration. The only explanation offered was that such erasures and alterations were made in correcting mistakes. Such an explanation is unsatisfactory, and results in the conclusion that the taxpayers' books have no value as evidence supporting their claims. Taxpayers rely exclusively on these books. It must be held that the burden of proof resting on them has not been discharged.

Once the cash register was cleared, Del Marcelle had no way of knowing whether the entries of receipts were incorrect; yet time and again he undertook to "correct" those entries. For 1943 alone there were fifty-four such alterations, of which thirty-nine were in the figures for Saturdays and Sundays, the busiest days of the tavern business. Wherever original entries are still legible they appear for larger amounts than those entered in place thereof.

The pattern of alterations is even clearer when those on the 1944 monthly summary page are reviewed. The original entries, made on the upper half of the page, were erased and new monthly summaries were substituted on the bottom half. The substituted entries were uniformly lower amounts in the ten and hundred dollar columns and were made, in the nature of things, long after any legitimate basis therefor had ceased to exist. An erroneous monthly total simply could not occur if corrections had been made coincidentally with daily clearings of the cash register. It is of confirmatory significance in this connection that an improved job of erasing was done after the books were returned to the taxpayers upon the filing of their first amended returns. Before that, however, the original entries, although erased, were still legible and had been copied by Mr. Longrie.

While no case has been made out by the taxpayers, the income reflected by their first amended returns must be accepted. This income was fairly and properly established upon the basis of the best information available. Of course the government is under no obligation to prove the exact amount of unreported income. United States v. Johnson, 319 U.S. 503, 517, 63 S.Ct. 1233, 87 L.Ed. 1546. But in the preparation of such returns every opportunity was accorded to the taxpayers to analyze the computations made by Mr. Longrie, who also adopted and gave effect to adjustments suggested by them. After an interval of several days, during which Mr. Longrie prepared the first amended returns, the taxpayers again called on Mr. Longrie and signed the returns, and came back the following day and made payment of the additional taxes.

I conclude that the taxpayers' claims for refund are without merit and must be denied.

Judgment will go for the defendant dismissing the complaint of the taxpayers on the merits, with costs. Counsel for defendant will prepare findings of fact and conclusions of law, together with judgment, in conformity herewith, same to be settled on five days' notice to taxpayers' attorney.