G. Lester Hash v. Commissioner.
Hash v. Commissioner
Docket No. 66858.
United States Tax Court
T.C. Memo 1959-96; 1959 Tax Ct. Memo LEXIS 153; 18 T.C.M. (CCH) 434; T.C.M. (RIA) 59096; May 13, 1959
Oppie L. Hedrick, Esq., and Helmut Holz, C.P.A., 219-223 North Fayette Street, Beckley, W. Va., for the petitioner. Charles B. Norris, Esq., for the respondent. TRAIN
Memorandum Findings of Fact and Opinion TRAIN, Judge: Respondent determined a deficiency in petitioner's income tax for 1953 in the amount of $8,719.23. The issue for decision is whether respondent erred in including in petitioner's 1953 income the amount of $12,284.97 which had been credited to his account on the books of a corporation of which he was president and a substantial stockholder. Findings of Fact Some of the facts have been stipulated and are hereby found as stipulated. Petitioner is an individual residing in Beckley, West Virginia. He timely filed *154 his 1953 income tax return on the cash basis with the district director of internal revenue, Parkersburg, West Virginia. Petitioner was president of the Hash Furniture Company, a West Virginia corporation, from the time of its formation on May 1, 1946, through 1953, the year here involved. The stock ownership of the Hash Furniture Company during the year 1953 was as follows: Number of
Name
Shares
G. Lester Hash
1,110
Rose Mary Hash and F. W. Mann,
trustees of G. Lester Hash Trust
2,260
G. Lester Hash and F. W. Mann,
trustees of Rose Mary Hash
Trust
2,260
Rose Mary Hash and F. W. Mann,
trustees of Rosemary II Trust
607
G. Lester Hash and F. W. Mann,
trustees of Doris June Hash
Trust
607
G. Lester Hash
156 Rose Mary Hash is the former wife of petitioner, and the former Rosemary Hash and Doris June Hash are daughters of petitioner. The Hash Furniture Company was successor to a partnership of the same name in which the petitioner was a partner. In 1944 and 1945, the partnership had made investments in the Harrisburg Broadcasting Company. On May 1, 1946, the investment account, showing a balance of $38,829.89, was transferred to the corporation *155 on its books. In 1948, the Hash Furniture Company reported income of $25,690.27 from this investment and paid income tax thereon. Subsequently, in 1952, petitioner agreed that this $25,690.27 was his income and paid tax for the year 1948 thereon. The Hash Furniture Company then filed a claim for refund with respect to the tax it had paid on the same amount and received a refund of $12,284.97 in 1953. During the year 1953, the petitioner's personal account, or drawing account, on the books of the Hash Furniture Company was credited with the same amount of $12,284.97. This credit was the only entry on the company's books with respect to this amount. A summary of the account, reflecting the credit, is as follows: December 31, 1952 Balance - Debit
$59,711.31
1953 Payments to District Director
of Internal Revenue
11,869.60
$71,580.91
Salary Credited
$20,500.00
Sale of Lot
2,704.79
Corporation Income Tax
Refund
12,284.97
35,489.76
December 31, 1953 Balance - Debit
$36,091.15
Throughout the year 1953, the Hash Furniture Company had accumulated earnings and profits substantially in excess of $12,284.97. The respondent determined that the $12,284.97 *156 credited to the account of petitioner on the company's books was includible in his income in 1953. Prior to crediting the petitioner's account, the company had closed out the investment account and had charged the balance of $39,190.27 remaining in it as of April 30, 1950, to the petitioner's drawing account. This balance included the $25,690.27 income for the year 1948 which the petitioner had agreed to include in income for that year and upon which he paid tax. This amount of $25,690.27 was never removed from the earned surplus account of the company by a debit thereto, nor was the tax refund restored to surplus but was simply credited to the petitioner's drawing account. Opinion The books of the Hash Furniture Company show that, throughout 1953, petitioner owed money to the company. Petitioner has introduced no evidence to the contrary. During 1953, this debt was reduced by $12,284.97, among other items. Although the petitioner did not physically receive this money, the same effect was achieved inasmuch as the credit to his drawing account reduced the petitioner's debt to the company pro tanto. Since the petitioner was benefited to the full extent of the $12,284.97 credit *157 and since the record shows that throughout the year 1953 the company had accumulated earnings and profits substantially in excess of that amount, the $12,284.97 is includible in petitioner's income for 1953. The petitioner introduced no evidence to establish that the $12,284.97 represented repayment, in whole or in part, of a loan. On brief, petitioner calls attention to a number of decided cases involving technical definitions of a dividend or of a distribution essentially equivalent to a dividend. These do not aid him here because clearly and in any event the credit to petitioner's drawing account is within the broad definition of gross income contained in section 22(a) of the Internal Revenue Code of 1939. Finally, the petitioner asserts that the credit was merely a bookkeeping entry and that such entries, while perhaps of evidential value, are not determinative of tax liability, citing Helvering v. Midland Ins. Co., 300 U.S. 216 (1937). He points out that certain other adjusting entries on the company's books were never made. Be that as it may, and agreeing that a bookkeeping entry alone may not necessarily be determinative of tax liability, the petitioner has *158 made no showing that the transaction at issue was not in fact exactly what the book entry showed it to be. Under the circumstances, the determination of the respondent is sustained. Decision will be entered for the respondent.