**SECURITY BANK S.S.B. & SUBSIDIARIES, formerly known as Security Savings and Loan Association, Petitioner–Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

No. 96–1289.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 13, 1996.

Decided June 24, 1997.

Sara B. Jensen, Michael, Best & Friedrich, Madison, WI, Robert A. Schnur (argued), Michael, Best & Friedrich, Milwaukee, WI, for petitioner–appellant.

Gary R. Allen, Gilbert S. Rothenberg (argued), Department of Justice, Tax Division, Appellate Section, Washington, DC, for respondent–appellee.

Before RIPPLE, DIANE P. WOOD and EVANS, Circuit Judges.

RIPPLE, Circuit Judge.

Security Bank S.S.B. and its subsidiaries ("SSB") seek review of a decision of the Tax Court. SSB made loans secured by mortgages on real property. When the borrowers defaulted, SSB acquired the real property through, or in lieu of, foreclosure. The Tax Court held that the gain realized in the subsequent sale of the real property ought to be treated as unpaid interest, and therefore income, by SSB. In accord with the other circuits that have addressed the issue, we now affirm the judgment of the Tax Court.

## I

## BACKGROUND

SSB is a savings and loan association that made loans secured by interests in real property located in Wisconsin. When a borrower defaulted, Wisconsin law permitted SSB to begin a judicial foreclosure action or to accept the deed on the property in lieu of foreclosure. Later, SSB sold the property and, in some instances, realized a gain on the transaction. At issue in this case is the appropriate tax treatment of gains realized by SSB when it resold the foreclosure properties over a four-year period (fiscal years 1985 through 1988).

When SSB sold foreclosure properties, it credited the entire amount of gain realized on that sale to its reserve for bad debts. It did not treat any portion of the gain as interest on the debt that had accrued but had not been paid to SSB.[1] If treated as interest, these amounts would have been taxable income. The Internal Revenue Service ("IRS") issued deficiency notices for those years. The Commissioner took the position that SSB was required to include in its gross income the gain from the sale of foreclosed property to the extent that it represented accrued but unpaid interest up to the date of judgment in foreclosure. The Tax Court,

relying primarily on the language of § 595 of the Tax Code, 26 U.S.C. § 595,[2] agreed with the position advocated by the IRS. In its view, "unpaid interest, to the extent recovered on the sale of the Foreclosure Properties, is required by the language of § 595(b) to be treated as interest paid on an indebtedness.... As such, it must be reported currently as ordinary income." 105 T.C. 101, 112, 1995 WL 479825 (1995).

## II

## DISCUSSION

■■■■ This case requires us to decide an issue that, although not decided in this circuit, has already confronted our colleagues in two other circuits. See *Gibraltar Fin. Corp. v. United States,* 825 F.2d 1568 (Fed.Cir. 1987); *First Charter Fin. Corp. v. United States,* 669 F.2d 1342 (9th Cir.1982). These holdings do not bind us. Indeed, we have the obligation to exercise our independent judgment. Nevertheless, we owe the efforts of our colleagues in the other circuits our respectful and careful study. As the Federal Circuit pointed out in *Gibraltar,* it is "particularly desirable in tax cases to ensure equal application of the tax system to our citizenry." 825 F.2d at 1572.

In studying the opinions of our colleagues in the other circuits, we believe that the concurring opinion of Judge Sneed in *First Charter* provides the most sure-footed starting point to our analysis. Like the Tax Court in this case, Judge Sneed emphasized the language of the governing statute. Because that language is central to our analysis, we set forth the text in full.

§ 595. **Foreclosure on property securing loans.**

(a) **Nonrecognition of gain or loss as a result of foreclosure.**—In the case of a creditor which is an organization described in section 593(a), no gain or loss shall be

---

1. SSB used the cash receipts and disbursements method of accounting for reporting its taxable income for the fiscal years 1985–1987. It switched to the accrual method of accounting for the 1988 fiscal year. In all years, it computed its deduction for bad debts by using the reserve method of accounting.

2. This section of the Internal Revenue Code was repealed by PL 104–188. The repeal applies to taxable years beginning after December 31, 1995. See Act of Aug. 20, 1996, Pub.L. No. 104–188, § 1616(b)(8), 1996 U.S.C.C.A.N. (110 Stat. 1857).

recognized, and no debt shall be considered as becoming worthless or partially worthless, as the result of such organization having bid in at foreclosure, or having otherwise reduced to ownership or possession by agreement or process of law, any property which was security for the payment of any indebtedness.

**(b) Character of property.**—For purposes of sections 166 and 1221, any property acquired in a transaction with respect to which gain or loss to an organization was not recognized by reason of subsection (a) shall be considered as property having the same characteristics as the indebtedness for which such property was security. Any amount realized by such organization with respect to such property shall be treated for purposes of this chapter as a payment on account of such indebtedness, and any loss with respect thereto shall be treated as a bad debt to which the provisions of section 166 (relating to allowance of a deduction for bad debts) apply.

**(c) Basis.**—The basis of any property to which subsection (a) applies shall be the basis of the indebtedness for which such property was secured (determined as of the date of the acquisition of such property), properly increased for costs of acquisition.

**(d) Regulatory authority.**—The Secretary shall prescribe such regulations as he may deem necessary to carry out the purposes of this section.

As Judge Sneed and the Tax Court recognized, this section of the Code eliminated the foreclosure as the taxable event because it represented no significant change in the economic relationship of the lending institution to the property used to secure the loan. The Federal Circuit elaborated in *Gibraltar* on the Congress' reason for making the sale of the foreclosure property, rather than the foreclosure itself, the taxable event:

Thus, . . . Congress intended that savings and loan associations no longer could recognize gain or loss at the time of foreclosure. Congress was of the view that foreclosure was essentially a step in the process of collecting on the loan; accordingly, the taxable event was postponed until the collection process actually yielded proceeds from the sale or other disposition of the acquired property. Thus, the amendments made a major change from prior law by telescoping events into a single transaction for tax purposes which occurred at the time the property was sold.

*Gibraltar*, 825 F.2d at 1573–74; *see also First Charter*, 669 F.2d at 1348 (discussing congressional purpose).

Therefore, although the language of the Code does not answer explicitly the issue before us, subsection (b) does give us a substantial indication of the congressional intent. That subsection requires that the property acquired on foreclosure "be considered as having the same characteristics as the indebtedness for which such property was security." As Judge Sneed reasoned in *First Charter*, "The 'indebtedness' that the foreclosed property secured possessed the characteristic of yielding interest. To have the same characteristics as the 'indebtedness,' the foreclosed property must have that ability." 669 F.2d at 1351.

As the Federal Circuit pointed out in *Gibraltar*, the legislative history of § 595 does not address directly the issue we must resolve. However, it does indicate that Congress intended that the foreclosed property retain the characteristics of the debt that it secured. *Gibraltar*, 825 F.2d at 1573 (citing S.Rep. No. 871881, at 47 (1967), *reprinted in* 1962 U.S.C.C.A.N. 3297, 3350). Therefore, to the extent that it is helpful, it supports the analysis of the statutory language of the Tax Court and of Judge Sneed in *First Charter*.

This reading of the Code and its legislative history, although not producing a crystal-clear answer for us, does comport with some very basic principles of taxation. Interest has, of course, long been treated as income for purposes of taxation. The general rule is that "receipt of interest is taxable as income whether paid in cash or by a credit." *Helvering v. Midland Mut. Life Ins. Co.*, 300 U.S. 216, 223, 57 S.Ct. 423, 425, 81 L.Ed. 612 (1937). There also is a long-settled principle that accrued interest retains its character and taxability when recovered

through a foreclosure. *See Midland Mutual,* 300 U.S. at 223–24, 57 S.Ct. at 425–26. If Congress had intended to alter these principles, we can assume that it would have done so far more explicitly.

Like our colleagues in the other circuits, we next must confront the regulation that, SSB argues, points in the other direction. Treasury Regulation § 1.595–1(e)(6)(i) states:

> Any amount realized [from the sale of foreclosure property] shall be applied against and reduce the adjusted basis of the acquired property, and to the extent that such amount exceeds the adjusted basis, it shall ..., in the case of a creditor using the reserve method of accounting for bad debts, be credited to the appropriate bad debt reserve.

SSB asserts that, under this regulation, *all* amounts of the sales proceeds, after foreclosure, constitute an "amount realized." Pointing to § 1.595–1(e)(6), the IRS responds that "amount realized" means "a recovery of capital." The Ninth and Federal Circuits agree with the IRS.[3] Although this rendition is not the only possible reading of this muddled regulation, it is not an unreasonable one. In any event, as the Tax Court pointedly noted, the language of § 595(b) must override any implication in the regulation that amounts attributable to interest ought to be ignored.

We also agree with the IRS that the result reached by the other circuits, which we also reach today, makes sense in terms of the economic realities of the situation. When the foreclosed property is sold, the proceeds go first to the recovery of the basis. Then, if there is more, the gain on the sale goes to the recovery of interest that should have been paid on the loan. As the Tax Court concluded, when there is an actual recovery on unpaid interest during the collection process, there is no logical reason to permit the lender to escape the recognition of that unpaid interest as taxable income.

Finally, we see no merit in SSB's assertion that its gain at the sale ought not be considered interest income because neither the original debtor nor the buyer receives an interest deduction when the buyer purchases foreclosure property. Generally, it submits, whenever one taxpayer receives interest income, another taxpayer receives an interest deduction. *See Midland Mutual,* 300 U.S. at 224, 57 S.Ct. at 426 ("It would be strange if the sum deductible by the mortgagor debtor were not chargeable to the mortgagor creditor as income received."). We discern no implacable rule of symmetry between deductibility of a payment to the payor and taxability to the payee. Congress dealt here with a special transaction, and its intent was clearly to recognize the economic realities of the situation for the taxpayer rather than an abstract principle of symmetry.

### Conclusion

Accordingly, the judgment of the Tax Court is affirmed.

AFFIRMED.

---

**3.** *See First Charter,* 669 F.2d at 1349 ("[R]eceipt of interest is income and not a recovery of principal or a capital asset."); *Gibraltar,* 825 F.2d at 1571 (agreeing with the Ninth Circuit that the regulation "reasonably interpreted the statute").