## JOHN FLYNN v. JASON M. FLYNN.

*Deed—Consideration—Evidence—Bill for discharge of mortgage.*

1. The *true* consideration of a deed may always be shown where it becomes material to do so. *Strohauer v. Voltz*, 42 Mich. 447.
2. This case involves questions of fact *purely*, and on a review of the testimony the decree of the court below discharging a mortgage held by the defendant on complainant's land is affirmed.

Appeal from Clinton. (Smith, J.) Argued November 9, 1887. Decided January 5, 1888.

Bill filed to rectify a deed so as to express the *true* consideration, and for the discharge of a mortgage. Defendant appeals from a decree granting the relief prayed for. Decree affirmed. The facts are stated in the opinion.

*Fedewa & Lyon (Martha Strickland,* of counsel), for complainant.

*Perrins & Baldwin (O. L. Spaulding,* of counsel), for defendant.

CHAMPLIN, J. The bill of complaint is filed by a father against his son, praying that a certain deed, executed by the father to his son, may be rectified so as to express the true consideration, and that a certain mortgage be decreed paid, and for a discharge thereof from the record.

On the fourteenth day of May, 1879, John Flynn was the

owner of the east half of the south-east quarter, and the north-west quarter of the south-east quarter, of section 14, in township 6 north, range 2 west, Michigan, being the town of Olive, Clinton county, Michigan. On that day he executed a mortgage of the premises above described, to secure the payment of a certain promissory note, of even date, for $314.79, on or before three years from the date thereof, with interest at 7 per cent., to R. J. Lounsbury, of Pontiac, Michigan.

The complainant claims that the defendant agreed to pay this mortgage as a consideration for his deeding to his son the east half of the south-east quarter of the section. The deed was drafted, and the consideration expressed therein is one dollar. It is a warranty deed, and contains a covenant against incumbrances.

The defendant claims that the consideration of the deed, as agreed upon at the time, was his promise and undertaking to pay certain indebtedness which his father owed to different persons in Oakland county, amounting to about $200, which he paid, and he says that, in addition to the deed, he was also to have certain personal property, consisting of two cows, one horse, one wagon, one harness, constituting, substantially, all the personal property his father owned, aside from his household furniture. He further testifies that, at the same time the agreement was made to deed the farm to him, he agreed with his father that he should live with his father, in the house upon his father's forty, and they should work both parcels, and that he would pay the aforesaid mortgage out of the proceeds of the crops raised.

He moved into the house with his father, and occupied it, with his wife; his father being the only member of the family living with him, although another son appears to have been there for a time. He put in the land to wheat, and received two-thirds of the crop, giving to his father one-third. The 80-acre tract conveyed to the son was mostly a tamarack

swamp, having only from 8 to 10 acres arable land upon it at the time of the conveyance. The father's 40 contained from 20 to 30 acres of tillable land. It appears that, during the first year the parties resided upon the premises, the complainant instigated a quarrel with the defendant's wife, and in consequence left the house, and went to reside with a neighbor. The defendant erected thereafter a house upon his land, but before it was completed the complainant returned, and the parties lived together, without further trouble, until defendant's house was completed, when he removed thereto.

The next season but one, the defendant again worked complainant's land upon shares, dividing the crop, share and share alike. When the mortgage matured, defendant paid the money to the mortgagee, and, instead of taking a discharge, took an assignment to himself, and refuses to discharge the same. He gives as a reason therefor that, instead of permitting him to work the land belonging to his father, so as to obtain the means to pay the mortgage, his father drove him off of the place, and refused to let him work it. He testifies to this, and is corroborated by the testimony of his wife.

I am not satisfied that this excuse is made out. Mrs. Flynn testifies that, except the one time, she had no further trouble with complainant. He came back and resided in the family with defendant and his wife. He had no team or farming implements to work his farm with. The defendant did work complainant's farm afterwards, and it does not seem to me that the statement that his father drove him off the place, and refused to let him work it, is borne out by the testimony.

The testimony shows that the 80-acre tract was worth from $300 to $600, and the personal property from $96 to $160. It does not seem probable that complainant should convey to defendant all this property, upon his undertaking to pay a few debts, less than $200 in amount; especially as Mr. Lounsbury testifies that he considered complainant "financially

busted" at the time. It is true that no great reliance can be placed upon complainant's testimony where it is not corroborated. His memory appears to be very defective in regard to his indebtedness at Oakland county, and his whole testimony was indefinite and unsatisfactory. But the testimony of the defendant is not much better. He is quite unable to tell, with three or four exceptions, to whom he paid debts, and the amounts. The debts he does recollect foot up about $160, nearly the same as the value placed upon the personal property by his father.

Samuel W. Smith, the attorney who drew the deed, testifies that the deed was drawn as directed, was read over to John Flynn, and was satisfactory to him. He testifies, further, that Jason M. Flynn was to have this land free and clear, and was to pay certain debts of his father's. He understood at the time that there was a mortgage on the 120 acres of land, and that Jason was to have the 80 acres free and clear from the mortgage, and that he was told so by John Flynn. Mr. Smith undoubtedly testifies candidly to his recollection of the transaction. Nevertheless, in order to reconcile it with the testimony of Jason M. Flynn, the defendant, wherein he testifies that he was to pay the mortgage, but was to have the use of his father's farm to enable him to do so, and that this agreement was made at the same time that the land was agreed to be conveyed, we must conclude that Mr. Smith was not informed of the manner nor by whom the mortgage debt was to be paid, in order to free the land from the incumbrance.

It must be remembered that this was an arrangement between father and son; and, on account of the mutual confidence naturally arising out of that relation, the parties would not be as likely to be so exact, or particular in having all the details and understanding between them stated or reduced to writing, as if the parties did not occupy that relation.

Robert J. Lounsbury testified that John Flynn said to him that he was going to deed to Jason 80 acres of the Clinton county farm, and that Jason had paid this claim against the wheat, and had or was to pay certain other claims, and was to furnish him money or the means to move onto the Clinton county farm. He further testified that a deed was made out of the Clinton county farm to Jason, and his recollection is that nothing was said about this 80 acres being subject to this mortgage, but he would not swear positively as to that. In view of Jason's testimony it is clear that he was not informed of the agreement between Jason and his father above referred to.

Abel Haddrill testified that he heard a conversation between these parties in 1879. He says:

"Mr. Flynn told Jason he would deed him 80 acres of land up there if he would pay his debts down here, and give him the privilege of working the whole of it, and living in his [John's] house till he could build a house of his own, and that he would help work the place."

This testimony is consistent with that of Jason, if it includes in "the debts down here" the mortgage debt. Blakeslee's testimony shows that his first conversation with complainant was had before the bargain was made between the parties, and has a bearing only upon the inducement influencing complainant to deed the 80 acres to Jason. He says he heard John say he would like to get his son Jason to go out there and live with him, and didn't want to go alone, and told him that he thought it would be a good thing for him. He further testified that a day or two afterwards John told him that he would deed, or was going to deed, 80 acres of land out there—Clinton county—to Jason, and he was going to live with Jason.

Jason M. Flynn, the defendant, after testifying about some conversation with his father which led up to the agreement, proceeds to state what the agreement was, as follows:

" And then he made me an offer that, if I would pay them debts down there for the eighty acres of land, he would let me work his forty, and live on it; he would let me live with him,—live as one family, work with me; I would pay this $314 and some cents on that mortgage, and—well, we talked on that, and I—I think I told him I would do that, providing he would turn me out his horse, cows, and a wagon, and the things he had there to work this land with; to take onto the farm such things as I need on the farm,— what things he had. Well, I didn't want to do it at first; finally I done it; said he would do that; he could help; we would all live together, and work the place; he would give me a good chance, he said, to work the place until I would get my own fixed up,—house on it,—and was able to build a house on it; and I was to work his place, and pay that mortgage for the use of his place, until I was able to build a house on my place.

" Q. You say he worked with you?

" A. Yes, he worked with me when he was able to work; was to work with me. I was not to pay him for the work; was to live as one family. I was to have the proceeds of the two places, and he was to live on the place with me; him and I together was to work the place, and pay the mortgage off.

" Q. Out of what?

" A. Off from his place and mine; proceeds of the two places."

He also testifies that the reason he did not carry out the agreement was that the complainant drove him off the place, and refused to let him work it. This is denied by complainant in his testimony.

It appears that defendant did work the place two seasons upon shares, after defendant claims he was driven off, and it does not appear either that complainant worked the place himself, or rented or let it to any other person to work, before the mortgage was paid.

I am not satisfied from the testimony that defendant was driven off the place, or that complainant refused to let him work it. In support of complainant's claim as to the con- sideration of the conveyance to defendant, is the testimony of

Joseph Bates and William M. Stocker, who testify, in sub-stance, that defendant stated to each of them, but not in each other's presence, that John Flynn conveyed the land to him in consideration of his paying this mortgage. Complainant's witnesses Conrad Burkhardt, Henry Schroeimer, and John H. Fedewa support the agreement as stated by the defendant.

If, as defendant states, he considered that he was under no obligation to pay off this mortgage debt, because his father had driven him from his place and refused to let him work it, why did he proceed and pay it? Defendant says he did it to save his own land from a sale under a foreclosure. But this reason is insufficient. The 40 acres covered by the mortgage, and owned by the father, is shown to be worth from $700 to $800. In the case of foreclosure, this parcel the defendant could oblige the mortgagee to sell first, and there can be no doubt that it would have brought enough to satisfy the mortgage debt, and leave defendant's 80 free and clear of the incumbrance. The inference from the fact that he voluntarily took up the mortgage is quite strong that he paid the mortgage debt in pursuance of his agreement.

From the whole testimony, I conclude—

1. That the consideration for the conveyance of the land was, in part at least, that defendant should pay off the mortgage debt, and that he might have the use of both places to enable him to do so.

2. That the complainant has not broken this agreement, or prevented its execution by defendant.

3. That the agreement has been executed by defendant, and the debt paid off by him.

4. That, having paid the debt according to the agreement, he ought to have discharged the mortgage from the records.

5. That by refusing to do so, and asserting it as an existing indebtedness, the mortgage is a cloud upon complainant's title to the forty acres owned by him, which he is entitled to have removed.

The defendant's counsel insist that relief in this case ought to be denied because—

1. The allegations in the bill as to a mistake in the deed are not supported by the proofs.

2. That to grant the relief would, in effect, be to reform a contract on a collateral issue, and annex an exception to the covenant against incumbrances, not on parol evidence, but against the balance of parol evidence, and change the contract in writing to an entirely different one.

The counsel very truly say that—

"The covenant against incumbrances is not affected by the testimony as to the consideration."

The bill of complaint prays for a reformation of the deed, so as to express the true consideration; but this was unnecessary, as the true consideration may always be shown where it becomes material to do so, without reforming the deed. *Strohauer v. Voltz*, 42 Mich. 447 (4 N. W. Rep. 161).

It also prays that the mortgage may be decreed paid, and that the same be discharged. This is the important relief asked for, and the bill is properly framed for this purpose. No change is required or necessary in the covenants of the deed. These stand unaffected by the decree asked for, and granted in the court below. The object is to remove the effect of the mortgage as a cloud upon complainant's premises, the mortgage having been paid.

The decree of the circuit court is affirmed, with costs.

SHERWOOD, C. J., and MORSE, J., concurred. CAMPBELL, J., did not sit.