*In re* DETROIT INVESTMENT CO.

CLAIM OF COLLECTOR OF INTERNAL REVENUE.

1. EVIDENCE—CONSIDERATION—PAROL EVIDENCE.

   While the consideration expressed in a written instrument is *prima facie* to be taken as the actual consideration, parol evidence is admissible to show that the true consideration was greater than or different from that expressed.

2. INTERNAL REVENUE—CORPORATE INCOME TAX—AMOUNT REALIZED —TIME.

   Corporation which purchased vendees' interest in an apartment building on November 1, 1928, and which transferred a subdivision to the vendees as part payment and received credit therefor on January 7, 1929, must have determination of gain or loss on income tax with respect to transfer of the subdivision entered into the year 1929 since that is the year in which amount realized from the sale was received where no provision in the original contract had been made for having the transfer of the subdivision become a part of the purchase price (45 Stat. at L. 815, 821, §§ 111–113).

Appeal from Wayne; Hunt (Ormond F.), J. Submitted June 16, 1937. (Docket No. 122, Calendar No. 39,177.) Decided December 14, 1937.

In the matter of the petition of Harcourt H. Ptolemy and others, directors, for dissolution of Detroit Investment Company, a Michigan corporation. On petition of Collector of Internal Revenue for the United States for allowance of claim for taxes. Objections were filed thereto by the receiver of the Detroit Investment Company. From order disallowing claim, the United States of America appeals. Affirmed.

*John C. Lehr,* United States Attorney, *David A. Wolff* and *Peter P. Gilbert,* Assistants United States Attorney, *James W. Morris,* Assistant Attorney General, and *Sewall Key, Norman D. Keller* and *Clarence E. Dawson,* special assistants to the Attorney General, for the United States.

*Miller, Bevan, Horwitz & Des Roches, Raymond H. Berry (Bela J. Lincoln, Ralph W. Barbier* and *Arthur L. Evely,* of counsel), for appellees.

Sharpe, J. The Detroit Investment Company, becoming insolvent, filed a petition in the chancery court of Wayne county seeking its dissolution and asking for the appointment of a receiver.

The government filed its claim for income taxes for the years 1927, 1928, and 1929 amounting in the aggregate to $30,596.51, but this amount was later reduced to approximately $20,000. Other creditors filed claims and the trial court held for consideration only two claims, namely, the claim of the government and certain labor claims, the amount of which was not in dispute. It was agreed that if the

claim of the government was allowed as a preferred claim, there would be no surplus to pay the labor claims.

It was claimed by the government (collector of internal revenue) that under 3 Comp. Laws 1929, § 15362, the funds available for distribution should be applied to the payment of the following items and in the following order: (1) taxes due the United States, State, county, or municipality; (2) cost of administration; and (3) all labor debts entitled to preference under the laws of this State.

The labor claimants contended that their claims have precedence over the United States Federal income tax and relied upon 3 Comp. Laws 1929, § 15930, which provides:

"That all debts which shall be owing for labor by any person or persons or corporation at the time he, they or it shall become insolvent, shall be preferred claims against the estate of such insolvent debtor or debtors, and have precedence in the payment thereof over all debts owing by such insolvent debtor or debtors at the time of becoming insolvent, which shall not have become a lien on such estate, or some portion thereof prior to the performance of the labor for which such debts for labor shall be owing."

The trial court denied the claim of the government for Federal income taxes assessed for the years 1928 and 1929. The government appealed. In deciding the issues involved in this cause, it will first be necessary to determine whether or not the claim of the government should be allowed and, if so, in what amount. The facts relating to this claim are as follows: The Detroit Investment Company on November 1, 1928, entered into an agreement with R. T. Lee and Orpha Lee, his wife, to purchase the Lee Plaza Apartment Hotel, the purchase price

of which was mentioned as $1,750,000. The Detroit Investment Company, in addition to a cash payment of $50,000, agreed to convey by warranty deed the equity in three parcels of property at a price of $184,000. A final agreement was entered into providing that interest should be paid at the rate of six and one-quarter per cent. instead of six and one-half per cent. and also providing a down payment of $154,000 instead of $184,000. The down payment of $154,000 was composed of the following items:

| | |
|---|---:|
| Cash | $50,000.00 |
| Adjustment | 130.87 |
| Equity in Farfel Apartment | 29,371.48 |
| Equity in Wager Terrace | 21,150.00 |
| Equity in Glendale Apartments | 53,347.65 |
| | $154,000.00 |

On January 7, 1929, the Oakwood subdivision was transferred by the Detroit Investment Company to R. T. Lee at which time credit in the amount of $80,000 was entered upon the land contract. The Detroit Investment Company filed its income tax return for the year 1928, disclosing a tax of $4,888.01 which was assessed. Its return for 1929 was filed showing a tax of $18,988.58 which was assessed. Certain payments were made and abatements granted on the 1929 return leaving a balance due for that year of $4,948.18 with interest.

Included in the 1928 return were gross profits claimed to have been realized from the transfer of certain property to the Lees as follows:

| | |
|---|---:|
| Farfel Apartments | $10,910.95 |
| Wager Terrace | 16,171.35 |
| Glendale Apartments | 8,367.39 |
| | $35,449.69 |

The return for 1929 included a claimed profit from the transfer of Oakwood subdivision to the Lees in the amount of $94,000.

The department of internal revenue eliminated the item of $94,000 from the 1929 tax return and added it to the income of the corporation for the year 1928 upon the theory that while the Oakwood subdivision was not transferred until January 7, 1929, yet the profit from this transaction constituted income for 1928. It is the claim of the Detroit Investment Company that they traded or exchanged the equities in three parcels of real estate in 1928 and a fourth parcel in 1929 for and as a payment for a vendee's interest in a land contract covering the purchase of the Lee Plaza property; that at the time the exchange was made the "fair market value" of the Lee Plaza property was $1,427,600 instead of the agreed purchase price of $1,750,000; and that the Detroit Investment Company sustained a loss upon this purchase which exceeded in amount the mentioned gain made upon the properties transferred to the Lees.

The trial court made the following finding of facts:

"The court finds as a fact that by the uncontradicted testimony offered at that time it was shown conclusively that there was no valid basis for the figures and report made by the Detroit Investment Company, which, upon its face tended to show a profit. As a matter of fact, whatever may have been the motive and intent to pad or exaggerate the figures, they were not justified. * * *

"The court is forced to the conclusion that the testimony was all one way, to-wit: that there was no valid basis at the time the assessment was made, that the Detroit Investment Company had made a profit upon the Lee Plaza deal, but, on the other hand, had, in fact, sustained a loss thereby."

We are not in accord with appellant's contention that evidence is not admissible to show the consideration received for the exchange of the properties. In *Stotts* v. *Stotts,* 198 Mich. 605, we said:

"While the consideration expressed in a written instrument is *prima facie* to be taken as the actual consideration, the rule is well settled by abundant authority that parol evidence is admissible to show that the true consideration was greater than or different from that expressed."

See, also, *Ruch* v. *Ruch,* 159 Mich. 231; *Ford* v. *Savage,* 111 Mich. 144; *Flynn* v. *Flynn,* 68 Mich. 20.

Appellant also contends that the Detroit Investment Company did not exchange the three parcels of real estate in the year 1928 and the fourth parcel during the year 1929 for a vendee's interest in the Lee Plaza property, but rather the Detroit Investment Company sold the property to the Lees for a cash consideration and with this amount together with an additional $50,000 made a down payment. When the land contract was entered into, November 1, 1928, it provided for the transfer of three parcels of land, this together with the sum of $50,000 took care of the down payment and the balance was to be paid in monthly instalments. There was no provision in this contract whereby the Oakwood subdivision was to become a part of this transaction. The latter piece of property was transferred January 7, 1929, and cannot be considered as part of the final agreement of November 1, 1928. It must follow that the gain or loss from the Oakwood subdivision transaction must be entered into the year 1929. In *Lucas, Commissioner of Internal Revenue* v. *North Texas Lumber Co.,* 281 U. S. 11 (50 Sup. Ct. 184), the Supreme Court of the United States said:

"An executory contract of sale was created by the option and notice, December 30, 1916. In the notice the purchaser declared itself ready to close the transaction and pay the purchase price 'as soon as the papers were prepared.' Respondent did not prepare the papers necessary to effect the transfer or make tender of title or possession or demand the purchase price in 1916. The title and right of possession remained in it until the transaction was closed. Consequently unconditional liability of vendee for the purchase price was not created in that year. *Gober* v. *Hart,* 36 Tex. 139. *Cf. United States* v. *Anderson,* 269 U. S. 422, 441 (46 Sup. Ct. 131); *American National Co.* v. *United States,* 274 U. S. 99 (47 Sup. Ct. 520). The entry of the purchase price in respondent's accounts as income in that year 'was not warranted. Respondent was not entitled to make return or have the tax computed on that basis, as clearly it did not reflect 1916 income.''

In our opinion the Detroit Investment Company sustained deductible losses for the years 1928 and 1929 and under the revenue act of 1928, §§ 111–113 (45 Stat. at L. 815–821) the following rule for computing gain or loss from the sale or other disposition of property is laid down:

"(a) Computation of gain or loss—Except as hereinafter provided in this section, the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the basis provided in section 113, and the loss shall be the excess of such basis over the amount realized. * * *

"(c) Amount realized—The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received."

Section 113 referred to in section (a) above, (45 Stat. at L. 818), is as follows:

"Property acquired after February 28, 1913.— The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property."

By stipulation of the parties it is agreed that the Detroit Investment Company is indebted to the Federal government in the principal amount of $1,802.14 for corporate income taxes for the year 1927. In our opinion the claim of the government for income taxes for the years 1928 and 1929 should be disallowed. In view of this determination we do not find it necessary to dispose of the other questions raised.

The decree of the trial court is affirmed. Appellees may recover costs.

WIEST, BUSHNELL, POTTER, and CHANDLER, JJ., concurred with SHARPE, J.

BUTZEL, J. (*concurring*). In concurring in the foregoing opinion, the discussion is limited solely to the questions involved in the statement thereof in appellant's brief. The controlling question thus presented is whether there was not really an exchange of properties, and whether appellee suffered a loss thereupon, notwithstanding the fact that it first reported a profit. The agreements to sell the four parcels and to purchase the hotel are contained in one instrument, which sets forth "the values at which the above properties are being taken in at are," etc. These words indicate an exchange rather than a sale for cash or credit. The four parcels consisted of equities which, after their transfer and the payment of $50,000, were paid for by credits of pay-

ments on a land contract for the purchase of the hotel property contemporaneously entered into with the Lees and which resulted in the acquisition of an equity in the hotel property by the Detroit Investment Company. The latter reported a profit on the transfer of the four parcels in its income tax returns. It carried the Lee Plaza on its books at $1,750,000. In the last analysis, however, it received in exchange for its four equities, the equity in the Lee Plaza Hotel. While we are impressed with the fact that the Detroit Investment Company by its written contract placed a value of $1,750,000 on the hotel, and we regard this as very strong evidence, nevertheless we cannot overlook the fact that three witnesses, including a member of the board of assessors of the city of Detroit, testified that the value of the hotel in 1928 was considerably less than the sum the Detroit Investment Company still owed for it after the application of the amounts at which the equities of the parcels were taken, plus $50,000 in cash that was paid. The trial judge was impressed with this testimony. Appellant relied upon the written terms of the contract and offered no other evidence. The testimony does bear out the fact that the amount realized from the sale or other disposition of the four parcels, upon consideration of the fair market value of the property received (the equity in the Lee Plaza Hotel), was a minus quantity. There was a loss in the transfer of the equities of the four parcels of property, not a gain.

Our attention has been called to numerous cases; the only one that closely resembles the instant one is *Roberts* v. *Commissioner of Internal Revenue,* 7 B. T. A. 1162, wherein the value of the property received in exchange was also in dispute. The board held that the value fixed by the deed did not give an accurate index to the actual value. In *Jackson*

*Sanatorium & Hospital Co.* v. *Commissioner of Internal Revenue,* 9 B. T. A. 734, the board held that the fair market value of notes and liberty bonds received in the transaction, rather than the statement of the amounts in the contract under which the land was disposed of, was the controlling factor. Again in *King* v. *Commissioner of Internal Revenue,* 10 B. T. A. 308, the board disregarded the values set forth in the contract, but took into consideration the actual value of a secondhand car received as part payment for the tract of land. The case of *Ives Ice Cream Co.* v. *Commissioner of Internal Revenue,* 15 B. T. A. 376, is not applicable, for in that case a credit memorandum was given to a dealer to apply on future purchases of new trucks. In the case of *Helvering* v. *Midland Mutual Life Ins. Co.,* 300 U. S. 216 (57 Sup. Ct. 423, 108 A. L. R. 436), the court held that when a mortgagee at a foreclosure sale bids in property for the amount of the mortgage plus interest, it must report the interest as income notwithstanding the claim that the property thus purchased was worth less than the amount of his mortgage plus interest. However, that case is quite distinguishable from the present on its facts, the court stating:

"The 'reality' of the deal here involved would seem to be that respondent valued the protection of the higher redemption price as worth the discharge of the interest debt for which it might have obtained a judgment."

To hold differently would be a serious burden to the income tax law, which, as the court says, did not profess "to embody perfect economic theory." It is true that in *Hawn* v. *Malone,* 188 Iowa, 439 (176 N. W. 393), the court stated:

"The test for determining whether there has been a sale or exchange of property is whether there was

a fixed price at which the exchange was to be made. If there was a fixed price, the transaction is a sale; if not, an exchange.''

The court also stated that parol evidence was admissible to show the actual consideration given and that such evidence shows that a sale was intended. The case did not involve a tax problem, but was concerned with the question of whether or not a mortgage had been impliedly assumed in a real estate transaction. If the quotation from *Hawn* v. *Malone, supra,* be accepted as a rule in every case where a set value was placed upon properties exchanged for one another, it would nullify the provisions of the income tax law, which states that the amount realized from the sale or other disposition of the property shall be the sum of the cash received plus the market value of the property other than the money received (Income Tax Law 1928, § 111, subd. c [45 Stat. at L., chap. 852, § 111, subd. c]). Appellant contends that the loss on the four parcels could be claimed only when and if a loss were sustained on the hotel property and that appellee is claiming an anticipated loss. Were this true no loss could be claimed on an exchange of property where the values are fixed by written contract until the property received in exchange was sold. Such a construction is not borne out by the decisions of the board of tax appeals herebefore referred to.

The case presents difficulties but the testimony leaves no doubt that the Lee Plaza Hotel in 1928 was worth far less than the Detroit Investment Company contracted to pay for it. The government states that it may be conceded that the taxpayer paid more than the hotel property was worth, but claims that nevertheless the ''profits'' on the four parcels, as shown by the taxpayer's return, are in-

come. There being an exchange of properties, true value could be shown notwithstanding a written contract of the parties.

This conclusion of the main question involved makes it unnecessary to discuss other dependent questions. I, therefore, concur in the foregoing opinion.

FEAD, C. J., and NORTH, J., concurred with BUTZEL, J.