ELLIOTT S. NICHOLS AND ANNE D. NICHOLS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 104322. Promulgated December 22, 1942.

*Raymond K. Dykema, Esq.*, and *Paul R. Trigg, Jr., Esq.*, for the petitioners.

*Philip M. Clark, Esq.*, for the respondent.

OPINION.

Disney, *Judge:* The petitioner takes the view that the foreclosure sale described in the facts set forth above resulted in a loss to him in the difference between his stipulated adjusted base, $155,721.05, and $71,833.65, being the fair market value of his 68.413 percent interest in the property purchased by him, based upon a value of $105,000. His view is that the transaction amounted to a mere exchange of notes receivable for land.

The respondent takes the position that under the doctrine of *Helvering* v. *Midland Mutual Life Insurance Co.*, 300 U. S. 216, income was realized on the accrued interest and "bonus" covered by the petitioner's bid at the foreclosure sale, and that profit was realized on the foreclosure in the difference between the petitioner's basis and the amount of principal indebtedness included in the bid at the foreclosure sale.

The *Midland Mutual* case, *supra*, unless distinguished, requires the inclusion, in the income of a mortgagee bidding in the property upon sale of the mortgaged property, of accrued interest included in the bid. The principle is not confined, as the petitioner argues, to cases involving insurance companies. The language in the *Midland Mutual* case is broadly applied to mortgagees. In *Manomet Cranberry Co.*, 1 B. T. A. 706, where a mortgagee, not an insurance company, bid in the mortgaged property at foreclosure sale for the amount of principal and interest, we held that the mortgagee realized income to the extent of the interest bid. In *Ewen MacLennan*, 20 B. T. A. 900, wherein a mortgagee, an individual, foreclosed and purchased the property for a bid price equal to the unpaid principal and accrued interest, the amount of accrued interest paid or applied as a credit was held to be taxable income to the petitioner. We held to the same effect in insurance cases in *American Central Life Insurance Co.*, 30 B. T. A. 1182; and *Missouri State Life Insurance Co.*, 29 B. T. A. 401; affd., 78 Fed. (2d) 778. In *T. Eugene Piper*, 45 B. T. A. 280, we expressly followed the *Midland Mutual* case in a proceeding involving individual petitioners and held that the mortgagees received interest income to the extent of the accrued interest included in their bid in purchasing the property upon foreclosure. We therefore decline to make a distinction between the present case and those involving insurance companies.

In the *Piper* case, *supra*, as herein, the property purchased was of a fair market value less than the bid. In *Manomet Cranberry Co.*,

*supra*, evidence was offered as to the value of the property, but in the light of our opinion we considered it unnecessary to make any findings with respect to value. The fair market value of the property foreclosed was less than the bid, in the *Midland Mutual* case, *supra*, and in *Missouri State Life Insurance Co.*, *supra*, and in both cases it was held that the fair market value of the properties acquired was immaterial. It is apparent therefore that the present situation can not be distinguished from those in the *Piper* case, and the other above cited cases, so far as concerns the element that fair market value is less than the bid at the foreclosure sale.

The petitioner, however, further seeks to distinguish the instant proceeding because of the insolvency of the mortgagor in this matter. Such therefore is the pivotal question here. He argues that insolvency of the mortgagor did not appear in the *Midland Mutual* case, and that certain statements in the opinion indicate that the lack of such insolvency on the part of the mortgagor was a determinative factor in the opinion. It is true that therein the Court said: "If the bid had been insufficient to allow full payment of the mortgaged debt, principal and interest, the company would have been entitled to a judgment for the deficiency"; also, that a stranger "would be obliged to pay in cash the amount of his bid, while the formality of payment in cash is ordinarily dispensed with when the mortgagee acquires the property on his own bid"; and again that: "The reality of the deal here involved would seem to be that respondent valued the protection of the higher redemption price as worth the discharge of the interest debt for which it might have obtained a judgment." We can not, however, agree with the petitioner that the above quotations demonstrate that the opinion of the Court in the *Midland Mutual* case depended upon solvency of the debtor or ability to collect from him to the extent of the amount bid. In our view the opinion there is bottomed upon the theory that the petitioner there shall be taxed on the basis of the legal effect of a sale to him, though made through foreclosure. Although referring to a possible judgment for a deficiency, the Court does not refer to a collectible deficiency, and states that "Income may be realized upon a change in the nature of legal rights held, though the particular taxpayer has enjoyed no addition to his economic worth. Compare *Lynch* v. *Hornby*, 247 U. S. 339, 344, 346." Again, the Court further lays down the principle that "There is nothing unfamiliar in taxing on the basis of the legal effect of a transaction," and points out in detail that the legal effect of purchase by the mortgagee is the same as that where a stranger purchases. *Ledyard* v. *Phillips*, 47 Mich. 305, 308, is cited to the effect that a purchasing mortgagee "enjoys the same rights as purchaser as would a third party." In

*Hadley Falls Trust Co.* v. *United States*, 110 Fed. (2d) 887, the court considered the decision in the *Midland Mutual* case to depend "upon the circumstance that the price bid by the mortgagee was entirely within its control and that it should accordingly be bound thereby." The Court in the *Midland Mutual* case points out that upon purchase by the mortgagee the debt is discharged by means of a credit, and continues:

* * * The amount so credited to the mortgagor as interest paid would be available to him as a deduction in making his own income tax returns. It would be strange if the sum deductible by the mortgagor debtor were not chargeable to the mortgage creditor as income received. Where the legal effect of a transaction fits the plain letter of the statute, the tax is held payable, unless there is clearly revealed in the act itself or in its history a definite intention to exclude such transactions from the operation of its applicable language. * * * [Citing many cases.]

Under this language it is incumbent upon the petitioner to demonstrate a definite intention to exclude from the applicable language of the statute as to income (as well as the cases cited above) a transaction where the mortgagor was insolvent. An insolvent mortgagor may have taxable income, and would be entitled to the deduction of interest credited against his debt, under the above language of the Court, equally with a solvent debtor. In *Harold M. Blossom*, 38 B. T. A. 1136, we allowed a mortgagor a deduction as for interest paid, to the extent that an amount equal to interest was bid by the mortgagee at foreclosure sale. In *National Life Insurance Co.* v. *United States*, 4 Fed. Supp. 1000, involving a bid of accrued interest, and where the Court held such bid to result in income to the mortgagee, it appears that although there was no specific finding of insolvency, the mortgagee "concluded that there was little likelihood of its being able to collect principal or interest without foreclosures, and that in many cases the mortgagors had moved away from the lands leaving them idle."

In *Bingham* v. *Commissioner*, 105 Fed. (2d) 971, the court, in deciding whether there was a sale or exchange (of capital assets) within the Revenue Act of 1932, section 101 (c) (2), where a mortgagor transferred the mortgaged property in payment of the debt, held that it was immaterial whether the mortgagor was financially able to pay. Conversely, by this logic it appears to follow that the fact that there was a sale through mortgage foreclosure, with the effect given to it by the *Midland Mutual* case, is not to be considered affected by inability of the mortgagor to pay. It is a *sale* none the less, a mortgage foreclosure sale, *Helvering* v. *Hammel*, 311 U. S. 504, and purchase price was in legal effect paid—by the mortgagee as purchaser.

The petitioner further relies upon *Hadley Falls Trust Co.* v. *United States*, *supra*, where it was held, under Regulations 74, article

193, that there was a right to a deduction for loss equal to the difference between mortgage obligations applied to purchase price and the fair market value of the property at the time of sale. In that case, however, as is shown from the opinion rendered by the District Court, 22 Fed. Supp. 346, the obligations owned by the mortgagee and applied upon the bid price included only principal amount, so that the present question as to whether accrued interest bid constitutes realization of income was not there involved. We declined to consider the *Hadley Falls Trust Co.* case as controlling in *T. Eugene Piper, supra*, wherein, although insolvency of the mortgagor is not discussed nor found as a fact, the evidence showed that the petitioner considered the mortgagor would have nothing with which to pay, that there was no possibility of his being "financially rehabilitated" and did not think that the payment of interest could be obtained. We therefore found that market value was immaterial, as above noted, and held the petitioner taxable upon interest bid. *West Production Co.*, 41 B. T. A. 1043, also relied upon by the petitioner, likewise involved no bid of accrued interest, and therefore is not authority upon the present question.

After examination of the authorities submitted and others, we are of the opinion that the fact of insolvency on the part of the mortgagor herein does not constitute a material distinction from the situation in *T. Eugene Piper, supra*, nor require a different conclusion from that which we reached therein. Moreover, as to the petitioner's argument that reality must be so considered as to require us to discern simply that he had an investment which was exchanged for real estate of a lower value, resulting in loss, we point to the answer of the Supreme Court to the same argument in the *Midland Mutual* case:

The company argues that taxation is a practical matter; that we should be governed by realities; that the reality is, that all the company got was the property; and that the property was worth less than the principal of the debt. The "reality" of the deal here involved would seem to be that respondent valued the protection of the higher redemption price as worth the discharge of the interest debt for which it might have obtained a judgment. * * *

In the present case, the record does not clearly show the reason for the bid higher than actual value. Though the petitioner testified that there was no connection between market value and bid and that neither the possibility of redemption nor deficiency judgment was considered by the mortgagees at the time, he further stated that the subject was informally taken up among the three mortgagees, that the amount of the bid was the amount due, but that they neglected to add extra interest at the time of foreclosure. He and the other mortgagees drove together to the town where the sale was held and were in attendance at the sale and "We just said bid the purchase price." All this obvi-

ously fails to show that there was no reason for the bid higher than actual value. On the contrary, it indicates intent to prevent anyone else from securing the property at a price less than the investment therein. It thus appears that the mortgagees agreed, in substance, not to let anyone else acquire the property for less than the indebtedness, including interest. That there was only one bid proves little or nothing. The mortgagees' high bid may have been the opening bid, made at once, precluding even a slightly less offer by any other bidder. It did in fact protect against redemption at any lower value, affected the mortgagor's right to deduction of interest, and therefore affected the tax consequences. Nor do we think that the evidence negatives the idea that the law as to redemption at bid price was considered, in spite of the petitioner's testimony, for a representative of the attorneys foreclosing was present at the sale. It is plain that the matter was in the hands of the attorneys, and the petitioner did not know who actually made the bid. We are unable to conclude that the possibility of redemption at bid price was not contemplated in the consummation of the foreclosure sale, as it was in the *Midland Mutual* case. The realities of the instant situation do not preclude, in our opinion, the theory of realization of income by the bid of accrued interest by the mortgagee.

We conclude and hold that the respondent did not err in including interest bid in the income of the petitioner. We do not include in such interest the $5,000 accrued upon $255,000 principal at the time of the change from a land contract to a mortgage in 1926, or the $45,000 "bonus" added to the then indebtedness. The parties at that time entered into a new transaction, and we regard as interest only that which accrued upon the $305,000.

The fact that we hold petitioner to have received income to the extent of accrued interest bid, is not decisive of the whole case; for there remains the question as to whether the provisions of Regulations 77, article 193,[1] here apply, requiring examination of the question of gain or loss to the mortgagees to the extent of the difference

---

[1] ART. 193. *Uncollectible deficiency upon sale of mortgaged or pledged property.*—Where mortgaged or pledged property is lawfully sold (whether to the creditor or another purchaser) for less than the amount of the debt, and the mortgagee or pledgee ascertains that the portion of the indebtedness remaining unsatisfied after such sale is wholly or partially uncollectible, and charges it off, he may deduct such amount (to the extent that it constitutes capital or represents an item the income from which has been returned by him) as a bad debt for the taxable year in which it is ascertained to be wholly or partially worthless and charged off. In addition, where the creditor buys in the mortgaged or pledged property, loss or gain is realized measured by the difference between the amount of those obligations of the debtor which are applied to the purchase or bid price of the property (to the extent that such obligations constitute capital or represent an item the income from which has been returned by him) and the fair market value of the property. The fair market value of the property shall be presumed to be the amount for which it is bid in by the taxpayer in the absence of clear and convincing proof to the contrary. If the creditor subsequently sells the property so acquired, the basis for determining gain or loss is the fair market value of the property at the date of acquisition.

Accrued interest may be included as part of the deduction only when it has previously been returned as income.

between amount bid and fair market value of the property purchased.

Respondent argues in effect that the effect of the *Midland Mutual* case is to require use of bid price as setting fair market value and he regards as gain the amount by which the principal amount bid exceeded the petitioner's base. Such view disregards the regulation, for the regulation on its terms particularly provides that the bid price is only presumptively fair market value. It has been in effect since 1926, during which time the statute upon which it is based has been repeatedly reenacted by Congress. It has received the approval of the courts, *Hadley Falls Trust Co.* v. *United States*, *supra; Malden Trust Co.* v. *Commissioner*, 110 Fed. (2d) 751; *Helvering* v. *New President Corporation*, 122 Fed. (2d) 92. The Treasury Department, in G. C. M. 19573, C. B. 1938-1, p. 214, approved it, pointing out the right to both a deduction for worthless debt and to a loss, where the mortgagee purchases; and I. T. 3121, C. B. 1937-2, p. 138, is to the same tenor. In *Vancoh Realty Co.*, 33 B. T. A. 918, 926, we quoted the regulation and considered it to require allowance of deduction both for bad debt and loss between fair market value and face value of obligations applied to mortgage purchase. We have held that the *Midland Mutual* case does not preclude inquiry as to the fair market value of the property foreclosed. *West Production Co., supra; Huey & Philp Hardware Co.*, 40 B. T. A. 781. We therefore hold that the regulation must be applied here, and proceed to ascertain loss or gain to the mortgagees accordingly.

We have above held the mortgagees to have received income to the extent of accrued interest bid. The regulation provides clearly for gain or loss of the difference between fair market value of the property and the amount of obligations applied to purchase or bid price "(to the extent that such obligations constitute capital or represent an item the income from which has been returned by him)." The face amount of such obligations bid herein was $435,000, but they constituted, as to the petitioner's share, capital of only $155,721.05, the stipulated adjusted cost basis of petitioner's interest in the principal amount of the notes. With reference to such base, Regulations 77, article 193, says: "Accrued interest may be included as part of the deduction only when it has previously been returned as income." Only the original cost base may be deducted. We hold that there was gain or loss to the petitioner of the difference between such $155,721.05 and the fair market value of petitioner's interest in the property. Considering all of the evidence, we conclude and hold that the petitioner's interest in the property had, on the date of sale, a value of $133,405.35, the value ascribed to it by

the petitioner in his return filed March 15, 1934. The petitioner was in the business of real estate.

The question then arises as to whether the loss (thus ascertained) is capital or ordinary, under section 101 (c) (2), Revenue Act of 1932. I. T. 3121, *supra*, calls it a capital loss, as does I. T. 3159, C. B. 1938–1, p. 188. The respondent, in his contention that the gain computed by him is ordinary, relies on *Bingham* v. *Commissioner*, 105 Fed. (2d) 971. *John H. S. Lee*, 42 B. T. A. 920; and *Joseph A. Guthrie*, 42 B. T. A. 696. Those cases did not involve mortgage foreclosure, the *Bingham* and *Lee* cases involving compromises and surrender of property for cancellation of obligations prior to foreclosure sale, and the *Guthrie* case collection of an undivided interest purchased in an estate, upon distribution by the executor after sale of the property. No case squarely applicable is cited and we find none.

We think the effect of Regulations 77, article 193, so far as concerns the gain or loss there allowed, contemplates capital gain or loss. The property has been acquired through the application of capital upon purchase price, and in that sense an exchange of capital assets has taken place. The apparent intent and the effect of the regulation is to permit adjustment of base in the taxable year when foreclosure takes place. We hold that the petitioner's loss is capital and limited under section 117 (a) (2) of the Revenue Act of 1932, to capital gains.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

Smith, *J.*, dissenting: In his income tax return for 1933 the petitioner reported a net loss of $10,784.07. In the determination of the deficiency the respondent has found an adjusted net income of $152,-896.78, and an income tax liability of $62,969.87. Contributing to the adjusted net income are the following amounts, all of which are in issue in this proceeding:

| | |
|---|---|
| (a) Net loss disallowed | $22,410.36 |
| (b) Accrued interest (added) | 89,809.68 |
| (c) Bonus (added) | 30,785.85 |
| (d) Profit on foreclosure (added) | 18,731.00 |
| Total | 161,736.89 |

All of the amounts in issue stem from the foreclosure sale of land of the Lagoona Beach Co., which was bid in by an agent for the mortgagees at a price of $435,000. The Court sustains the petitioner's contention with respect to items (c) and (d), above. It admits that the petitioner did sustain a net loss of $22,410.36 but finds that the

deductible net loss must be limited by section 117 (a) (2) of the Revenue Act of 1932. With this conclusion I am in accord. I am not, however, in accord that the correct amount of the net loss was $22,410.36, as more fully explained below. The Court also reduces the accrued interest to be added to the petitioner's net income from $89,809.68 to $86,389.03, which is 68.413 percent of the accrued interest included in the Court's decree of $126,275.75.

The Court finds that the fair market value of the petitioner's interest in the real estate acquired at the foreclosure sale was $133,405.35. I think that the amount was much less. To prove his case the petitioner introduced in evidence the testimony of three expert real estate men who gave their opinion as to the fair market value of the entire property at the date of the foreclosure sale. The highest appraised value given by any witness was $105,000. The petitioner contends, and I think correctly, that the fair market value of the property was not in excess of $105,000, 68.413 percent of which is $71,833.65. The petitioner, therefore, contends that the actual loss sustained by him upon the transaction was the difference between $71,833.65 and the stipulated cost of his interest in the mortgage notes, $155,721.05, or $83,887.40. There was no countervailing evidence as to the fair market value of the land. I think, therefore, that the net loss was actually $83,887.40.

In its opinion the Court states that the high bid price made by the agent for the mortgagees at the foreclosure sale, namely, $435,000, "indicates intent to prevent anyone else from securing the property at a price less than the investment therein. It thus appears that the mortgagees agreed, in substance, not to let anyone else acquire the property for less than the indebtedness. including the interest. That there was only one bid proves little or nothing. The mortgagees' high bid may have been the opening bid, made at once, precluding even a slightly less offer by any other bidder." As a Judge of the Court who heard the witnesses in this case I emphatically dissent from this view. There is not a particle of evidence to support it. At the hearing of this proceeding the petitioner testified as follows:

A. I thought the property was then worth about two hundred thousand dollars. to have bid and your idea of the net value of the property?

A. I thought the property was then worth about two hundred thousand dollars. I think I was very optimistic, because the first time we tried to sell it after then, which was in 1934, we authorized the sale at one hundred fifty thousand dollars and the man thought he had a propspect but wasn't able to move it.

Q. You told us now what your thought was about the market value of the property. I am asking you what influenced your conception of the market value of the property? Was it the amount of the bid?

A. No connection at all.

Q. Can you tell me what consideration was given in connection with the fixing of the bid to possibilities of redemption?

A. We didn't consider it.

Q. You understand what the term redemption means?

A. Yes, somebody comes in and pays us. That wasn't in the picture.

Q. What can you tell us about a consideration given at that time to a deficiency judgment?

A. Oh, no thought of it at all.

Q. Why not?

A. Other creditors had not been able to collect anything. What could we collect?

Q. Hopeless?

A. Hopeless, certainly. There was no chance. The only thing we looked to was the land.

The argument of the attorney for the petitioner in his brief is that the Lagoona Beach Co. notes had no value in excess of the value of the land and that the bid price of $435,000 was made with the full knowledge on the part of the mortgagees that the notes could be surrendered in payment of the bid price. The evidence is to the effect that this was done and that no cash was paid in on the bid price.

All of the evidence goes to show that the Lagoona Beach Co. notes had no value in excess of the value of the land which secured them; also that there was no probability that the defunct Lagoona Beach Co. or parties in interest would ever redeem the property at a price in excess of its value. It was immaterial to the petitioner and his associates whether the property was bid in at its fair market value or at an amount in excess of that value which could be paid by the surrender of the notes.

The only argument of the respondent upon this point is that it was immaterial what the fair market value of the property was at the time of the foreclosure sale. His argument is that the petitioner and his associates bid $435,000 for the property and that that amount must be accepted as its fair market value. The Court has not sustained the respondent's contention upon this point. It has found the fair market value of the land to be $200,000 at the time of the foreclosure sale and that the petitioner's proportionate part of that fair market value is $133,405.35.

We have then this situation: The petitioner sustained a loss upon the foreclosure transaction. Yet this Court holds that the petitioner derived taxable income from the transaction represented by accrued interest in the amount of $86,389.03.

This result gives me much puzzlement. Without the receipt of any money or of any property equaling the petitioner's investment in the mortgage notes, the petitioner is held liable to income tax upon a large amount of accrued interest which he did not receive. In the words of Nicodemus, "How can these things be?"

The incidence of the income tax is upon "gains, profits, and income." Without any gain or profit and without the receipt of anything that has the semblance of income, how can it be said that a man

has received taxable gain? Is a man taxable upon a transaction which results in a loss? The taxpayer made his return upon the cash basis. In *Avery* v. *Commissioner*, 292 U. S. 210, it was held that a shareholder's dividends were received in the calendar year in which the shareholder received his check. In that case it was stated as a fact that the shareholder kept his accounts on the cash receipts and disbursements basis. The Supreme Court held that if we give the words of the statute, section 201 (e) of the Revenue Act of 1921, their ordinary meaning, "clearly the dividends under consideration were not actually received by the taxpayer during 1924 and 1929 * . * * And, unless Congress has definitely indicated an intention that the words should be construed otherwise, we must apply them according to their usual acceptation."

By many decisions of the Supreme Court we are told that questions involving income tax liability should be construed according to truth and substance and not mere form. The income tax is imposed upon true gains. The amount taken as a tax is simply a portion of the amount of the income received.

In this case the petitioner is not paying tax upon any amount received. In truth and substance the petitioner was no richer after the foreclosure sale than he was before. He did not receive the wherewithal to pay the tax which this Court finds to be due. The conclusion of the Court seems to me to lack the touch of reality. It is contrary to fact.

Were it not for the decision of the Supreme Court in *Helvering* v. *Midland Mutual Life Insurance Co.*, 300 U. S. 216, the deficiency in income tax determined by the Commissioner would at most be nominal. Indeed, but for that opinion it is probable that the respondent would not have determined a deficiency to be due from the petitioner. That case involved the question of whether a life insurance company, which is taxable under entirely different provisions of the income tax law from other corporations or individuals, was taxable upon interest which was paid by a credit against the purchase price of property bid in by a mortgagee on a foreclosure sale. The Court did not know what the fair market value of that property was. It expressly stated that there was no evidence as to the fair market value of the property before it.

I am unable to understand the soundness of the application of the Supreme Court's opinion in the above cited case to the present. In *Hadley Falls Trust Co.* v. *United States*, 110 Fed. (2d) 887, the Circuit Court of Appeals for the First Circuit, referring to *Helvering* v. *Midland Mutual Life Insurance Co.*, *supra*, said: "Although the language of the court is very broad, we can not believe that it was intended to preclude examination into the fair market value of property under all circumstances, especially in a case where the agency

required to engage in the process of valuation, viz., the Treasury Department, has itself been responsible for the rule making valuation necessary." In that case the court took a common sense view of the matter and decided the issue for the taxpayer. In my opinion that is what this Court should do in this case and not force the taxpayer to bear the expense of an appeal.

The Court finds that article 193 of Regulations 77 is applicable to this proceeding. That regulation provides that "If the creditor subsequently sells the property so acquired, the basis for determining gain or loss is the fair market value of the property at the date of acquisition." It thus appears that upon a subsequent sale of the property purchased at the foreclosure sale the basis for the computation of gain or loss is $133,405.35. The petitioner will, therefore, never be permitted to include as a part of the basis upon the sale of the property the accrued interest of $86,389.03 which the Court holds is taxable income to this petitioner for 1933. It seems to me plain that the Congress never intended such a result.

---

Turner, *J.*, dissenting: There is little doubt that it would be impossible to convince the man on the street that gain has been realized by a mortgagee through his acquisition of mortgaged property at a foreclosure sale where the fair market value of the property at the time of such acquisition is substantially less than his investment in the mortgage and the mortgage notes. The Supreme Court said in *Farmers Loan & Trust Co.* v. *State of Minnesota*, 280 U. S. 204, that "Taxation is an intensely practical matter and laws in respect of it should be construed and applied with a view of avoiding, so far as possible, unjust and oppressive consequences." Were there nothing further in the books, we might well conclude that article 193, *supra*, is a reasonable interpretation of the statute and that the sale of mortgaged property and the satisfaction of the mortgage claim by credit of the selling price thereto are to be ignored and the transaction, for income tax purposes, treated only as an exchange of the mortgage claim for the real estate. In *Helvering* v. *Midland Mutual Life Insurance Co.*, 300 U. S. 216, however, the Supreme Court has held that where mortgaged property is sold under foreclosure, even though to the mortgagee, and the mortgage claim is satisfied by credit of the purchase price thereto, such sale and credit may not be ignored but must be given full legal effect in determining the income tax consequences to the mortgagee. The Court said:

* * * A mortgagee who, at foreclosure sale, acquires the property pursuant to a bid of the principal and accrued interest is, as purchaser and grantee, in a position no different from that of a stranger who acquires the property on a bid of like amount. It is true that the latter would be obliged to pay

in cash the amount of his bid, while the formality of payment in cash is ordinarily dispensed with when the mortgagee acquires the property on his own bid. But the rights acquired *qua* purchaser are the same in either case; and, likewise, the legal effect upon the mortgage debt is the same. In each case the debt, including the interest accrued, is paid. Where the stranger makes the purchase, the debt is discharged. by a payment in cash; where the mortgagee purchases the property, the debt is discharged by means of a credit.   \*   \*   \*

In the instant case, however, it is held that *Midland Mutual Life Insurance Co.* is controlling as to interest but not as to the debt itself. Such a holding is, in my opinion, wholly untenable. Not only is there nothing in the above pronouncements by the Supreme Court which would permit recognition of the sale and credit of the selling price to the mortgage claim only so far as such sale and credit effected the payment of interest, but, to the contrary, the Court plainly and pointedly said, "In each case the debt, including the interest, is paid."

Furthermore, I am unable to find in article 193, *supra*, any statement or even the suggestion of a thought which gives any support to the straddle taken by the majority on the issues in this case. The effect of the regulation is to ignore the foreclosure sale and the satisfaction of the mortgage claim by a credit thereto of the proceeds of the sale and to treat the occurrences as an exchange by the mortgagee of his mortgage claim for the property. See *Hadley Falls Trust Co.* v. *United States*, 110 Fed. (2d) 887. That so much of the mortgage claim as represents interest is not to be dealt with separately is shown by the regulation itself by specifically excluding from the computation, in case of loss on the exchange, accrued interest not reported as income, the inference clearly being that otherwise the interest features of the mortgage claim are confined within the bounds of the exchange. Either under *Midland Mutual Life Insurance Co.* there is collection of the debt and the interest thereon to the extent of the proceeds of the sale of the mortgaged property, or, applying the regulation, there is an exchange of property for property, the gain or loss being measured by the difference between the fair market value of the property received and the cost or other basis of the mortgage claim exchanged therefor. Logic and reason require one conclusion or the other; there can be no justification for application of the regulation to one part and *Midland Mutual Life Insurance Co.* to another part of the same transaction.

*Hadley Falls Trust Co.* v. *United States*, *supra*, it seems to me, presents the strongest possible case for application of the regulation. Analyzing the practical results of the purchase by a mortgagee of the mortgaged property at the foreclosure sale, the court justified the treatment of the transaction as an exchange of the property for property as distinguished from the ordinary purchase of property, and concluded that the regulation "cannot be held a plain misinter-

pretation of a clear, unambiguous provision of the statute." The court had already pointed out that the regulation had continued in the same form since it was promulgated under the Revenue Act of 1926, and, if a reasonable interpretation of the statute, it must, under *Helvering* v. *Reynolds Co.*, 306 U. S. 110, and other cases of the same import, be given the same force and effect as if it were a part of the statute itself. Though it recognized that the regulation and the pronouncements of the Supreme Court in *Midland Mutual Life Insurance Co.* were in conflict and could not be reconciled, the court further justified its application of the regulation on the ground that the Supreme Court did not have the regulation before it in the case mentioned and did not therefore pass upon its soundness or validity.

While it is true that this tribunal and other courts in seeking the answer to questions otherwise difficult have often fallen back on the proposition that the repeated reenactment of a statute without substantial change amounts to legislative approval of a regulation of long standing, they have on numerous other occasions rejected regulations equally venerable on the theory that they did not present a reasonable interpretation or application of the statute, and in some instances, even the existence of a regulation has been ignored. In other words, where the regulation and the tax year are concurrent and the regulation is found to be a reasonable interpretation of the statute or principle of law involved, it is applied and the pronouncements argued for by the petitioner as to the force and effect of a regulation of long standing are very solemnly declared; but where the courts have felt that the regulation was not a reasonable interpretation of the statute or the principle of law involved, it has just as positively been overruled, whether hoary with age or of recent promulgation.

With all due respect to the court in *Hadley Falls Trust Co.* in its efforts to find some justification for the application of a practical rule, I am unable to see that the Supreme Court in any manner limited its pronouncement of the law with respect to the satisfaction of a mortgage claim through the sale of the mortgaged property and the crediting of the proceeds therefrom. If I am correct in this view, it is not within the province of this Court to give effect to any regulation promulgated by the respondent, whether practical or impractical or new or old, if contrary to the law so declared. It is my opinion therefore that the Supreme Court has precluded us from applying the regulation in question, and unless and until the Supreme Court itself, or Congress by specific legislation, indicates some other measure for determining gain or loss in transactions such as we are here concerned with, we have no alternative but to

apply the rule laid down in *Helvering* v. *Midland Mutual Life Insurance Co., supra.*

It may well be that, regardless of the correct rule in the instant case, application of the regulation in *T. Eugene Piper, supra,* was justified even though in apparent conflict with *Midland Mutual Life Insurance Co.,* since that case was governed by the installment sales provisions of the act wherein the Commissioner was specifically directed to promulgate regulations for the computing and reporting of income and losses on installment sales obligations. Be that as it may, that case is no less contradictory in its treatment of interest and principal than the instant case.

For the reasons stated, I respectfully note my dissent.

TYSON, *J.*, agrees with this dissent.