## MUTUAL TEL. CO. v. UNITED STATES.

### No. 931.

United States District Court
D. Honolulu, Hawaii.

Sept. 28, 1951.

Heaton L. Wrenn, Marshall M. Goodsill, Jr., Honolulu, T. H. (Anderson, Wrenn & Jenks, Honolulu, T. H., of counsel), for plaintiff.

Thereon Lamar Caudle, Asst. Atty. Gen., Andrew D. Sharpe, Ruppert Bingham, Sp. Assts. to Atty. Gen., Edward A. Tonjes, Sp. Asst. to Chief Counsel, Bureau of Internal Revenue, Los Angeles, Cal., Howard K. Hoddick, Acting U. S. Atty., District of Hawaii, Honolulu, T. H., for defendant.

McLAUGHLIN, District Judge.

The question here presented is whether the Commissioner of Internal Revenue erred in his determination that the taxpayer, under Sections 22(a), 41, and 42 of the Internal Revenue Code, 26 U.S.C.A. §§ 22(a), 41, 42, was required to include in its taxable income for the calendar years 1941 and 1942 the increased installation and "supersedure" charges that it received from its subscribers, following the authorization for such charges by the Public Utilities Commission of the Territory of Hawaii.

The pertinent sections of the Internal Revenue Code are copied in the margin.[1]

### 1. Findings of Fact

The facts in this case have been stipulated, and are adopted by this Court as its Findings.

#### I.

The plaintiff is a corporation organized under the laws of the Kingdom of Hawaii and existing under the laws of the Territory of Hawaii. It is a public utility whose principal business consists in furnishing wire telephone service in the Islands. It is subject to the jurisdiction of the Public Utilities Commission of the Territory, hereinafter referred to as the Commission, under Chapter 82, Revised Laws of Hawaii, as amended. Its rates, fares, charges, records, accounting system, financial transactions, etc., are subject to the regulation of the Commission.

#### II.

On September 10, 1941, the plaintiff filed a petition with the Commission, which was assigned Docket No. 764, in which the

---

**1.** "§ 22. *Gross income*

"(a) *General definition.* 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *"

"§ 41. *General rule*

"The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer * * *.

"§ 42. *Period in which items of gross income included*

"(a) General rule. The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of a different period. * * *"

plaintiff requested the Commission to authorize certain increases in its installation tariffs and to authorize establishment of new "supersedure" tariffs *for the purpose of diminishing the demand for new telephone service in Honolulu.*

Installation, or connection, charges are of two types—service connection charges and re-connection charges. A service connection charge is one customarily made by the plaintiff for connecting each telephone instrument newly placed into a subscriber's premises. A re-connection charge is one ordinarily made by the plaintiff for re-connecting a dead instrument already in place. A supersedure charge is one, not theretofore made by the plaintiff, for substituting a new subscriber for a prior subscriber at the same premises, where the telephone instrument is not dead and is not re-connected.

### III.

After a hearing on the above petition, the Commission filed its Decision No. 51 and its Order No. 379. In the Decision the Commission approved the plaintiff's request, and in its Order it made the requested increases in the installation and the supersedure tariffs.

In the Decision, the Commission found that while the plaintiff did not contend that additional income was required, *it did maintain that the additional charges were required for the retarding effect;* that the plaintiff had made no showing that an increase in revenue was required and that the Commission believed that it was improper to allow the increase to go through in a manner which would permit it to be passed on to the common stockholders in the form of increased dividends; that the increase would be credited to Account No. 175, Contributions to Telephone Plant, and in computing rates would be a reduction from the net investment in arriving at a rate base, and that investors would not require a return and subscribers would be spared paying a capital charge on it; that on motion of the Commission or other application of the plaintiff, other disposition of the accrued balance might be made as conditions warranted; and that in the opinion of the Commission the increased charges should be but temporary.

In Order No. 379 the Commission directed that the increased installation and the new supersedure charges should be charged to Account No. 175, Contributions to Telephone Plant, and the amounts so accruing should be segregated from the other charges in said account.

### IV.

The increased installation and the supersedure charges were put into effect by the plaintiff as of October 2, 1941. On April 22, 1942, the plaintiff filed with the Commission a petition in which it requested a termination of the additional charges. The Signal Corps of the United States Army had established a system of priorities for telephone allocations and consequently the plaintiff considered the additional charges no longer necessary.

### V.

Pursuant to the filing of the aforesaid petition, the Commission, by Decision No. 57 and Order No. 406, filed on July 18, 1942, terminated the increased and newly-established charges as of May 1, 1942. In its decision and order, the Commission directed that the additional charges collected by the plaintiff under the earlier decision and order were to be held in Account No. 175 until the Commission should determine their final disposition.

### VI.

For many years the plaintiff has kept its accounts in accordance with the Uniform System of Accounts for Class A Telephone Companies issued by the Federal Communications Commission, which system was prescribed for the plaintiff by an earlier order of the Commission.

Account No. 175, "Contributions of Telephone Plant", is one of the accounts provided for in the said Uniform System. In accordance with that System, the plaintiff credited to Account 175 contributions by its subscribers for line extensions. Such contributions by its subscribers have never been reported by the plaintiff as income for Federal income tax purposes, and have never been taxed as income.

In 1945 the Federal Communications Commission amended the said Uniform System of Accounts by eliminating Account No. 175 and instructing that the amounts held in such account be deducted from the appropriate plant asset accounts. The plaintiff in 1945 complied with these instructions with respect to the amounts in Account No. 175 that represented contributions for line extensions. Sub-account 175.-2, however, referred to below, was retained intact because of the said Order No. 406 of the Commission, terminating the increased and newly-established charges and directing that those which had been theretofore collected be held in Account No. 175.

The increased installation and the new supersedure charges were collected by the plaintiff from subscribers from October 2, 1941, to May 1, 1942. Pursuant to the said Order No. 379 of the Commission, the plaintiff credited amounts equal to its collections of the increased installation and new supersedure charges to a new Sub-account No. 175.2, entitled "Liability for Installation Charges." This new sub-account was started by the plaintiff and maintained as a sub-account under the general Account No. 175, "Contributions of Telephone Plant" in order that the amounts in Sub-account No. 175.2 could be segregated from the other amounts credited to Account No. 175 in accordance with the Commission's order.

The defendant does not concede that the sums received by the plaintiff from subscribers on account of the increased installation and the new supersedure charges which were credited to Sub-account No. 175.2 were or are liabilities of the plaintiff.

The plaintiff received $13,341.50 and $28,673 in 1941 and 1942, respectively, on account of the increased and the newly established installation and supersedure charges. This total of $42,014.40 was adjusted to $41,970.50 in February, 1944, to correct an accounting error of $44 that was detected in reconciling the accounts.

## VII.

Sub-account No. 175.2 was credited with all the increased installation and new su-

persedure charges collected by the plaintiff under Decision No. 51 and Order No. 379, supra. These additional charges were not billed to the customer as such. The subscriber was charged in one sum for the total of his installation or supersedure charge. It was recorded on the bill as "Other Charges" and was explained by a supplemental statement sent out with the bill. This statement was entitled "Statement of Other Charges and Credits" and has several items listed on it. One of these items was "Service Connection Charge" and the installation or supersedure charge in one amount was recorded opposite this item.

Although the billings to subscribers did not show the amount of the increased installation charges separately from previously existing installation charges and did not show the newly established supersedure charges separately, the plaintiff maintained its accounting records, as it was required to do by the order of the Commission, so as to reflect the amount of the increased installation charges separately from the previously existing installation charges, and so as to reflect the newly established supersedure charges separately from previously existing charges. The additional charges were all credited to Sub-account No. 175.2, "Liability for Installation Charges", and the plaintiff maintained a record of the amount of the additional installation or supersedure charge paid by each customer so that the exact amounts of such payments could have been refunded to the individual customers if this were ever required.

The total cost to the plaintiff of making new service connections exceeded the revenue from the tariffs charged therefor—even including the additional new connection charges authorized by Order No. 379, supra. The cost of materials, including telephone instruments, switches, wiring and cables, and the cost of field labor required to make the installation, were in the case of each new service connection capitalized by setting up such costs in the plaintiff's plant asset account. These costs remain in the plant asset account until the instrument is removed and at the time of removal are charged to operations. Admin-

istration and office expenses in the case of new service connections were charged off as expenses of operations in the year in which they were incurred. The total estimated cost of each new service connection was $13.92 during this period. The cost of materials and field labor, which was capitalized as aforesaid, was approximately 85 per cent of such total cost, and the cost of administration and office expenses, which was expensed as aforesaid, was approximately 15 per cent of such total cost.

The revenue from the tariffs charged for reconnections and supersedures under the Commission's Order No. 379 exceeded the total cost to the plaintiff of making such reconnections and supersedures. Such costs were entirely charged off as expense of operations in the year incurred.

Of the additional revenue (see Paragraph VI) received by the plaintiff on account of the increased charges, approximately 60.55 per cent was received on account of the additional service connection charges, 21.35 per cent on account of the additional re-connection charges, and 18.10 per cent on account of the new supersedure charges.

With the exception of billing and the accounting necessary to keep the additional charges segregated from other charges, the plaintiff was not required to do, and did not do, any additional work or perform any additional service in order to receive the increased installation charges and the new supersedure charges; that is, it did exactly the same work for subscribers in making connections and supersedures as it had done before the new charges were established and as it did after they were terminated.

Although Sub-account 175.2 was credited with the additional charges as they were collected and the plaintiff's general cash account was debited, the moneys collected by virtue of the additional charges were intermingled with other moneys in the general treasury of the plaintiff, and were used by the plaintiff without regard to their source. The plaintiff at all times material herein had on hand cash or marketable securities in excess of the amounts collected from subscribers for the increased installation charges and the new supersedure charges.

## VIII.

The plaintiff maintains its records on the accrual basis, and files its tax returns on the accrual basis for the calendar year. The plaintiff did not report the aforesaid increased and newly established installation and supersedure charges received in 1941 and 1942 as part of its gross income in its tax returns for 1941 and 1942.

## IX.

The plaintiff filed in due time its income tax, declared value excess profits tax, and excess profits tax returns for the calendar years 1941 and 1942 with the Collector of Internal Revenue of the United States for the District of Hawaii. The Report of Examination by the Internal Revenue Agent in charge, dated November 2, 1943, proposed deficiency assessments of taxes for those years on the grounds of failure to include as gross income the increased installation charges and the new supersedure charges hereinabove described. A protest of the proposed deficiency assessments on these grounds was filed with the Agent in Charge under date of July 28, 1944. The protest was denied by the Commissioner of Internal Revenue and a notice of determination of deficiency dated January 8, 1945, was received by the plaintiff. The deficiencies determined by the Commissioner on account of failure to include the said charges in gross income were:

| | | | |
|---|---|--:|--:|
| 1941 | Income Tax Liability | | $1,978.47 |
| | Excess Profits Tax Liability | | 6,959.35 |
| 1942 | Declared Value Excess Profits Tax Liability | | 1,892.43 |
| | Excess Profits Tax | $24,102.51 | |
| | Less: 10% post war credit | 2,410.25 | 21,692.26 |
| Interest | | | 4,205.88 |
| | Total | | $36,728.39 |

These additional taxes and interest, in the total amount of $36,728.39 for both years, were assessed. They were paid by the plaintiff on February 2, 1945, to Fred H. Kanne, at that time Collector of Internal Revenue for the District of Hawaii. Mr. Kanne is now dead. The payment of

these taxes and interest was not charged to Account No. 175.2.

The plaintiff filed claims for refund on December 6, 1946, for each of the calendar years 1941 and 1942 with the Collector of Internal Revenue for the District of Hawaii. The claim for refund for 1941 was for $10,482.57, plus interest; and the claim for 1942 was for $27,951.66, plus interest. The Report of Examination of the Internal Revenue Agent in Charge, dated October 16, 1947, proposed that the claims be disallowed. On June 1, 1948, the plaintiff received a notice of disallowance, dated May 19, 1948, covering both claims for refund, in full, from the Commissioner of Internal Revenue.

### X.

During 1948, the Commission, following an application by the plaintiff for an increase in rates, held a hearing on the plaintiff's rates and charges.

In 1931, the plaintiff's board of directors established a jointly contributory retirement system, known as the "Retirement System of Mutual Telephone Company", to be operated under a board of managers consisting of the president of the plaintiff and four other persons appointed by the board of directors. The Retirement System is a separate entity from the plaintiff, and maintains its own books and accounts. The plaintiff does not have in its own accounts a "pension reserve", as such, and has reserved the right to discontinue or to reduce at any time its contributions to the Retirement System. An employee who took the necessary steps provided for in the Rules and Regulations of the System was credited with years of service put in prior to the establishment of the System, and was issued a certificate stating that he was entitled to all the rights and privileges provided for by the Rules and Regulations, and that he was entitled to a specified prior service credit in full for all service rendered prior to July 1, 1931.

Although the plaintiff did not suggest to the Commission at the time of the 1948 hearing that any action be taken regarding Sub-account 175.2, the Commission on its own initiative, in its Decision No. 102, considered the cost to the plaintiff of the Retirement System, and in Order No. 598 directed that the plaintiff "transfer the amount of $41,970.50 presently carried in Account 175.2, 'Contribution of Telephone Plant', to its pension reserve to reduce the accrued liability for past service."

On December 3, 1948, the plaintiff addressed a letter to the Commission outlining the tax difficulties that had arisen in connection with the additional charges which had been credited to Sub-account 175.2. In that letter, the plaintiff requested that the Commission suspend paragraph 4 of Order No. 598, providing for the transfer of the funds from Sub-account 175.2 to the plaintiff's "pension reserve" until a final determination of the amount transferable. On December 22, 1948, the Commission replied that this matter should be held in abeyance by the plaintiff pending formal approval by the Commission. On February 24, 1949, the Commission advised the plaintiff that it had denied the latter's request to suspend the transfer. On March 1, 1949, the plaintiff deposited $41,970.50 in cash to the account of the Retirement System, in the Bank of Hawaii, and deleted Sub-account 175.2. On March 8, 1949, the plaintiff advised the Commission of this action.

In 1949 the plaintiff paid the sum of $232,777.36 to the plaintiff's Retirement System; and in the same year, in determining its taxable net income, the plaintiff deducted the sum of $190,806.86, representing statutory deductions under the Internal Revenue laws, on account of the plaintiff's obligation, if any, under the provisions of the Retirement System.

### 2. Opinion
The Sums Received by the Plaintiff as Increased Connection and "Supersedure" Charges Constituted Gross Income

■ The first point urged by the plaintiff is that the sums received by it as increased connection and "supersedure" charges are not includable in the plaintiff's gross income for 1941 and 1942, or in any other year, because they do not constitute "income" within the meaning of the Sixteenth Amendment.

Not only does the language of the Amendment itself and of the Internal Revenue Code refute this contention, but also do the holdings of the Supreme Court negative its validity.

■ In North American Oil Consolidated v. Burnet, 1932, 286 U.S. 417, 424, 52 S.Ct. 613, 615, 76 L.Ed. 1197, Mr. Justice Brandeis said: "If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent."

This "claim of right" doctrine has been consistently followed by the Supreme Court, even down to a few months ago. See Commissioner of Internal Revenue v. Wilcox, 1946, 327 U.S. 404, 408, 66 S.Ct. 546, 90 L.Ed. 752, affirming 9 Cir., 1945, 148 F.2d 933; United States v. Lewis, 1951, 340 U.S. 590, 592, 71 S.Ct. 522.

See also Commissioner v. Brooklyn Union Gas Co., 1933, 2 Cir., 62 F.2d 505, 506; Gilken Corporation v. Commissioner of Internal Revenue, 6 Cir., 1949, 176 F.2d 141, 145.

So here, the plaintiff received the additional charges, in question under a claim of right. The mere fact that it might later have to disgorge them did not militate against such revenues being "income" when they were received. It would be unconscionable to permit the plaintiff to retain these gains, admittedly unjustified as mere revenue—and, as we have seen, it is permitted to retain them—and yet pay no income tax upon them.

Nor can we in this case be concerned with the niceties of accountancy technique. We are here interested in realities, and not in the jargon of bookkeeping.

In Weiss v. Wiener, 1929, 279 U.S. 333, 335, 49 S.Ct. 337, 73 L.Ed. 720, Mr. Justice Holmes said: "The income tax laws do not profess to embody perfect economic theory. They ignore some things that either a theorist or a business man would take into account in determining the pecuniary condition of the taxpayer." See also Helver-ing v. Midland Mut. Life Ins. Co., 1937, 300 U.S. 216, 225, 57 S.Ct. 423, 81 L.Ed. 612; Commissioner v. Union Pacific R. Co., 2 Cir., 1936, 86 F.2d 637, 639; Board v. Commissioner of Internal Revenue, 6 Cir., 1931, 51 F.2d 73, 75, certiorari denied, 284 U.S. 658, 52 S.Ct. 35, 76 L.Ed. 557.

■ As its second contention, the plaintiff insists that the sums received by it as increased connection and supersedure charges are not includable in its gross income for 1941 and 1942 even though they constitute "income" in a subsequent year.

In this connection, if one bears in mind the facts in the instant case, the following language in the case of Board v. Commissioner of Internal Revenue, supra, 51 F.2d at pages 75–76, cited with approval by the Supreme Court in North American Oil Consolidated v. Burnet, supra, is pertinent: "We are of the opinion that the board was right in allocating this income to the year 1920. That it was actually received during that year is not disputed; nor is it disputed that it was received under a claim of right and as profits to which the petitioner was justly entitled. The only claim made is that the contract whereby petitioner purported to secure his interest in the pipeline was illegal and unenforceable by reason of his position as a director of the Old Dominion Oil Company. In this contention the petitioner of course never acquiesced. *The payment was never refunded.* Possibly it *might* have been recovered in the litigation which was instituted for that purpose, *but it was not,* and it is at least unusual that a taxpayer should be heard to assert the possibility of an adjudication of alleged misconduct and breach of trust, as relieving him from tax liability which is predicated upon the assumption of the honesty and legality of his acts. Obviously, the sum involved must be considered as income either for the year 1920 or 1927, and we think that it must be allocated to the year 1920, *in which it was actually received, rather than to the year 1927, in which the taxpayer's right to retain it* was established." (Emphasis supplied.) See also Penn v. Robertson, 4 Cir., 1940, 115 F.2d 167, 175.

### 3. Conclusion of Law

The increased installation and supersedure charges received by the plaintiff from its subscribers in the calendar years 1941 and 1942 constituted income ascribable to and taxable in those years.

Let judgment be entered for the defendant.